No. 67,050

WILLIAM DON BOATRIGHT, *Appellee*, v. KANSAS RACING COM-
MISSION, *Appellant*, and RODNEY L. BOATRIGHT, *Appellee*, v.
KANSAS RACING COMMISSION, *Appellant*.

(834 P.2d 368)

Opinion filed May 22, 1992.

*Warran D. Wiebe,* assistant attorney general, argued the cause and was on the brief for appellant.

*H. Douglas Pfalzgraf,* of Pfalzgraf Law Offices, of Wellington, argued the cause and was on the brief for appellee Rodney L. Boatright.

*Michael E. Cleary,* of Miller & Cleary Law Offices, of Wichita, argued the cause, and *Vern Miller,* of the same firm, was with him on the brief for appellee William Don Boatright.

The opinion of the court was delivered by

HERD, J.: This is an appeal from the district court's judicial review of an administrative proceeding by the Kansas Racing Commission (Commission) to cancel the occupation racing licenses of William Don Boatright and Rodney L. Boatright. The Commission found the Boatrights used live lures to train racing greyhounds in violation of K.S.A. 1991 Supp. 74-8810(g) and cancelled their licenses. On appeal, the district court consolidated the two cases and reversed the Commission's order. This appeal followed.

The facts are undisputed. William Boatright is Rodney Boatright's father. They each own and operate separate greyhound training businesses in Sumner County. William's racing kennel and training facility accommodate three to four hundred greyhounds. Rodney owns and operates a greyhound training farm. Both parties hold kennel owner occupation licenses issued by the Commission pursuant to K.S.A. 1991 Supp. 74-8816(a). Greyhounds owned by William compete at tracks in 10 states throughout the United States, including Wichita Greyhound Park and the Woodlands in Kansas City, Kansas.

Both parties use the same greyhound training procedure, which begins when the hounds are pups and continues until they arrive at the racetrack. The training starts with permitting the young greyhounds to chase live jackrabbits in a large field. Next, the greyhounds are allowed to chase live rabbits hooked to a mechanical arm which circulates around a small track called the "wheel." In the final training phase, the greyhounds are taught to run on a "schooling" or "training" track. This phase also involves the use of a live rabbit on a mechanical arm. The rabbits are used until killed by the greyhounds. When training is completed the greyhounds are shipped to the various racetracks.

The Commission instituted separate administrative actions against the Boatrights, alleging they had violated K.S.A. 1991 Supp. 74-8810(g) by using live lures in training racing greyhounds. The Boatrights argued the statute did not apply to their operations because the young dogs they trained were not yet racing greyhounds. In its initial orders the Commission found the statute applied to the training of all racing greyhounds whether they were currently racing at a track or would be racing at some future time. Pursuant to K.S.A. 1991 Supp. 74-8816(f), the Commission revoked both their licenses and fined William $2,500 and Rodney $1,000. After reviewing its initial orders, the Commission adopted them as final orders.

Each party petitioned the Sedgwick County District Court for review of the Commission's order. The cases were consolidated. The district court held K.S.A. 1991 Supp. 74-8810(g) applies only to greyhounds (1) registered with the National Greyhound Association; (2) at least 15 months of age at the time of training; and (3) registered at a racing greyhound track.

None of the Boatright dogs met the court's definition of racing greyhounds. It thus reversed the orders of the Commission.

The district court also held in the alternative that the term racing greyhound is unconstitutionally vague under both the criminal and business standard of review and, therefore, does not apprise a reasonably prudent person of the act prohibited. This appeal followed.

The first issue for our consideration on appeal is whether K.S.A. 1991 Supp. 74-8810(g) is unconstitutionally vague. The statute provides: "It is a class B misdemeanor for any person to use any animal or fowl in the training or racing of racing greyhounds."

It is axiomatic that a statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it may be struck down. *Guardian Title Co. v. Bell*, 248 Kan. 146, 149, 805 P.2d 33 (1991).

There are two standards for determining whether a statute is unconstitutionally vague. The criminal standard requires a determination of whether the statute's

"language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process." *Hearn v. City of Overland Park*, 244 Kan. 638, 642, 772 P.2d 758, *cert. denied* 493 U.S. 976 (1989).

Statutes regulating business are afforded greater leeway than criminal statutes. We have stated:

"A common-sense determination of fairness is the standard for determining whether a statute regulating business is unconstitutional for vagueness, *i.e.*, can an ordinary person exercising common sense understand and comply with the statute? If so, the statute is constitutional." *Guardian Title Co. v. Bell*, 248 Kan. at 150 (citing *Harris v. McRae*, 448 U.S. 297, 311 n.17, 65 L. Ed. 2d 784, 100 S. Ct. 2671, *reh. denied* 448 U.S. 917 [1980]).

The Commission argues the business standard should apply here because K.S.A. 1991 Supp. 74-8810(g) regulates business and this case comes to us from an administrative proceeding, rather than a criminal action. For support the Commission cites *Feliciano v. Illinois Racing Board*, 110 Ill. App. 3d 997, 443

N.E.2d 261 (1982). In *Feliciano*, a jockey licensed by the Illinois Racing Board (Board) allegedly possessed an electrical device designed to stimulate a race horse. Possession of this type of device is both an administrative violation and a crime under Illinois law. The Board applied the civil standard of preponderance of the evidence to determine the jockey had committed an administrative violation of the Illinois Racing Act. 110 Ill. App. 3d at 998-1000.

The jockey appealed, claiming the Board erred by not using the criminal standard of proof because the alleged conduct could subject him to both civil and criminal penalties. The court determined the civil standard was proper because the Board was limited to penalizing the economic interests of the jockey by suspending his racing license and did not have authority to issue criminal penalties against the jockey. 110 Ill. App. 3d at 1000-03.

*Feliciano*, does not involve the issue of whether a statute is unconstitutionally vague. Moreover, this court has already determined that if a statute could subject a person to both criminal and administrative actions, as K.S.A. 1991 Supp. 74-8810(g) does, the criminal standard for determining vagueness applies. *Kansas City Millwright Co., Inc. v. Kalb*, 221 Kan. 658, 662-63, 562 P.2d 65 (1977). In *Kansas City Millwright Co., Inc.*, the Kansas Retailers' Sales Tax Act was called into question. The Act subjected building contractors to penalties and criminal liabilities if they mistakenly interpreted its provisions. This court adopted the rule of *Connally·v. General Constr. Co.*, 269 U.S. 385, 70 L. Ed. 322, 46 S. Ct. 126 (1926), which used the criminal standard. Thus, we use the criminal standard of review.

The parties cite numerous witnesses who testified differently as to the interpretation of the statute. Kansas Representative Jack Lacey; Herb Koerner, president of the National Greyhound Association; and Richard Nelson, president of the Kansas Greyhound Association, testified that their interpretation of K.S.A. 1991 Supp. 74-8810(g) prohibited the use of live lures at parimutuel tracks when training or racing racing greyhounds. Other witnesses, such as Fred McCormack, an investigator for the Commission, testified they believed the statute prohibited the use of live lures in the training and racing of any greyhound that even-

tually raced at a parimutuel track. Such evidence is irrelevant. A statute is not unconstitutionally vague because there is more than one interpretation of it. See *Hearn v. City of Overland Park,* 244 Kan. at 641.

We hold the language of K.S.A. 1991 Supp. 74-8810(g) conveys a sufficiently definite warning when measured by common understanding and practice to apprise the public of the prohibited activity. Hence, we hold the statute is not unconstitutionally vague.

Now let us take up the second issue, which is interpretation of K.S.A. 1991 Supp. 74-8810(g).

Courts must follow several rules when interpreting statutes. K.S.A. 1991 Supp. 77-201 provides rules of construction to "be observed, unless the construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute." K.S.A. 1991 Supp. 77-201 *Second* further provides: "Words and phrases shall be construed according to the context and the approved usage of the language, but the technical terms and phrases, and other words and phrases that have acquired a peculiar and appropriate meaning in law, shall be construed according to their peculiar and appropriate meanings."

In *State v. Haug,* 237 Kan. 390, 699 P.2d 535 (1985), this court was asked to interpret K.S.A. 21-4619 to determine whether it provided for the expungement of a diversion. We stated:

"Nowhere in K.S.A. 21-4619 is there any reference to the expungement of anything other than records of *convictions.* The statute is clear and unambiguous in this regard and is not open to construction or speculation as to the legislative intent behind it. It has long been the rule in Kansas that in determining whether a statute is open to construction, or in construing a statute, ordinary words are to be given their ordinary meaning and courts are not justified in disregarding the unambiguous meaning. *State v. Gibson,* 8 Kan. App. 2d 135, 137, 651 P.2d 949 (1982); *State v. Howard,* 221 Kan. 51, 54, 557 P.2d 1280 (1976). Even a penal statute subject to strict construction should not be read so as to add that which is not readily found therein, or to read out what, as a matter of ordinary language, is in it. *State v. Logan,* 198 Kan. 211, 213, 424 P.2d 565 (1967)." 237 Kan. at 391-92.

Further, "[i]t is presumed the legislature understood the meaning of the words it used and intended to use them; that the legislature used the words in their ordinary and common meaning; and that the legislature intended a different meaning when it

used different language in the same connection in different parts of a statute." *Rogers v. Shanahan,* 221 Kan. 221, 223-24, 565 P.2d 1384 (1976). It is the court's responsibility, as far as practicable, to reconcile different provisions within an act to make them "consistent, harmonious, and sensible." *State v. Adee,* 241 Kan. 825, 829, 740 P.2d 611 (1987).

Applying these rules of construction, we first note the term racing greyhound is not defined within the Act. Clearly the legislature meant to regulate the racing of greyhounds. K.S.A. 1991 Supp. 74-8802(i) states: " 'Greyhound' means any greyhound breed of dog properly registered with the national greyhound association of Abilene, Kansas." K.S.A. 1991 Supp. 74-8812(b) then provides the regulation: "Greyhounds shall not compete in any race meeting before reaching the age of 15 months." The district court took this regulation as a definition and held the meaning of racing greyhound within K.S.A. 1991 Supp. 77-8810(g) meant: (1) A greyhound registered with the National Greyhound Association; (2) a greyhound that is at least 15 months of age; and (3) a greyhound registered at a greyhound racing facility.

The Boatrights contend this interpretation is proper. The Commission, however, argues its interpretation of "racing greyhounds" should be given judicial deference under the doctrine of operative construction because the Commission is the agency charged with enforcing the Kansas Parimutuel Racing Act. Under the doctrine of operative construction, the court will give deference to the agency's interpretation of the law although the court may substitute its judgment for that of the agency's. This court has stated:

" 'The ruling of an administrative agency on questions of law, while not as conclusive as its findings of facts, is none the less persuasive and given weight, and may carry with it a strong presumption of correctness, especially if the agency is one of special competence and experience.' [quoting 2 Am. Jur. 2d, Administrative Law § 676, p. 556.] If, however, the reviewing court finds that the administrative body's interpretation is erroneous as a matter of law, the court should take corrective steps; the determination of an administrative body of questions of law is not conclusive, and, while persuasive, is not binding on the courts." *Kansas Bd. of Regents v. Pittsburg State Univ. Chap. of K-NEA,* 233 Kan. 801, 810, 667 P.2d 306 (1983).

The Commission also argues legislative history supports its interpretation of the statute. Originally, H.B. 2044 did not contain a provision prohibiting the use of animals in the training of grey-

hounds for racing.. After hearing testimony from animal rights groups, the House Committee on Federal and State Affairs amended H.B. 2044 to include the following prohibition: "It is a class C felony for any person to . . . use any animal or fowl in the training of racing greyhounds." Minutes of House Committee on Federal and State Affairs (Feb. 16, 1987). The House Committee of the Whole then amended the section to prohibit the use of dogs, cats, or fowl in the training of racing greyhounds and the use of any animal or fowl in the training of a racing greyhound within the confines of a racetrack facility. House J. 1987, p. 284. This version of the bill would have allowed the use of rabbits at greyhound farms and training tracks. The Senate subsequently amended the section to read: "It is a class B misdemeanor for any person to : . . . use any animal or fowl in the training of racing greyhounds." Minutes of Senate Committee on Federal and State Affairs (April 8, 1987). According to the Commission, the Senate's first amendment to the provision would have allowed the use of animals or fowl in the actual racing of greyhounds at parimutuel tracks. The second amendment by the Senate, the statute's current language, extends the prohibition against using animals or fowl to the racing of racing greyhounds. Sen. J. 1987, p. 619. The Commission argues the Senate's final amendment "extended the prohibition to include racing as well as training activities."

The Commission cites Attorney General opinion No. 87-150 for support of its interpretation of K.S.A. 1991 Supp. 74-8810(g). A state representative asked the Attorney General whether the provision prohibited the use of live lures in the training of greyhounds that are being trained as racing greyhounds but have not yet raced. Concentrating upon the statute's term "training," the Attorney General found the ordinary meaning of the term training referred to "the instructing, drilling and teaching to obey commands." Therefore, the Attorney General concluded the prohibition extended. to "the use of such lures in instructing, drilling and teaching greyhound dogs to be racing greyhounds regardless of ·racing experience."

We agree with the Attorney General's opinion and hold the legislative intent in enacting K.S.A. 1991 Supp. 74-8810(g) was to ban the use of live lures in the training of greyhounds for

racing and in the actual racing of greyhounds. The use of the term "racing greyhounds" was to distinguish greyhounds used for racing from greyhounds used for hunting. Most of the training of greyhounds for racing occurs before the dog attains the age of 15 months. A statute applying only to older dogs already involved in racing on the track would do little to eliminate the use of live lures in the training and racing of greyhounds. Thus, we hold the use of live lures in the training of greyhounds for racing is prohibited.

We hold the Boatrights violated K.S.A. 1991 Supp. 74-8810(g).

The judgment of the district court is reversed.

ABBOTT, J., dissenting: The Boatrights are being deprived of their livelihood by a vague, ambiguous term, "racing greyhounds," as used in K.S.A. 1991 Supp. 74-8810(g), that the majority makes no real effort to define. No evidence was presented that the Boatrights had trained greyhounds, which had actually raced at a racing facility, with animal lures.

Everyone agrees "racing greyhounds" means something different than "greyhounds." The majority relies on legislative history and an attorney general's opinion to conclude that the legislature intended to distinguish "racing greyhounds" from "hunting greyhounds." This is not the only distinction that can be made. Greyhounds, even those from the same litter, can become household pets, hunting greyhounds, greyhounds that ultimately run in competition at race tracks, and greyhounds used for breeding purposes.

Even while applying the stricter criminal standard, the majority, by necessity, makes all registered greyhounds "racing greyhounds" until a determination is made by someone that the greyhound is a pet, a hunter, or to be used for breeding purposes. A reader of the statute is left to guess who makes the decision and when it can or must be made.

The issue before this court is how an ordinary person, who wants to train greyhounds, would construe "racing greyhounds," as used in K.S.A. 1991 Supp. 74-8810(g). What the legislature intends does not matter in a criminal statute. Nor should a person have to check legislative history in order to determine whether

conduct is criminal. If prohibited conduct is not clearly delineated in a statute, the accused receives the benefit of the doubt.

Unlike the majority, I do not know what "racing greyhounds" means, and, if it was relevant, I am not sure what the legislature intended by using the term "racing greyhounds." I suspect different legislators had different views about what the term means. For example, at least one legislator testified he thought the statute in question applied only to greyhounds racing at an authorized track. The 1987 House Journal states that one legislator explained his vote in favor of the parimutuel bill by saying, "Mr. Speaker, until I determined that the ban on live lures language in H.B. 2044 applied only to those dogs racing on tracks for purses, I could not vote for the parimutuel bill." House J. 1987, p. 1142.

What does the industry understand "racing greyhounds" to mean? The president of the National Greyhound Association, a greyhound business owner for over 30 years, testified that a "racing greyhound is a registered greyhound that his papers have been turned in and he has been schooled and—officially and has qualified at a licensed parimutuel race track." He further testified that prior to the above time, the dog "would just be a registered greyhound," not a "racing greyhound."

The president of the Kansas Greyhound Association also testified. He has been an owner/operator of greyhound kennels for 28 years. He stated: "The definition of a racing greyhound is a greyhound that is either itself present on the track or the papers are at least turned into the track. Then it comes under the control of the jurisdiction of the race commission."

The Racing Commission investigator testified:

"Q. Okay, where at and, again, I want to know, since you're an investigator, at what moment in time does that greyhound that's registered, the first part of your equation's been met, when does it become a racing greyhound in Kansas?

"A. Again, it would depend on the individual training of the dog and at what track that maybe he wants to send it to.

"Q. So your testimony is that it varies; is that correct?

"A. That would be correct.

"Q. And it varies from dog to dog and instance to instance, doesn't it?

"A. Yes, sir.

"Q. And that's the present state of Kansas law, at least under your understanding?

"A. Yes, sir.

"Q. Okay. It's not a very stable definition, is it?

"A. That's—I can't answer that.

"Q. Okay. If a dog is 3 years old—and we can come up with all kinds of hypotheticals, but I just want an idea—if a dog is 3 years old and it's never been to the track but it's been trained to go to the track, is it a racing greyhound?

"A. Yes. You know, again, it depends on who, what, and where.

"Q. And it depends on—on your definition, doesn't it? In other words, it's very subjective as to what the intent is, according to you?

"A. Yes, sir.

"Q. It's not a fixed standard, is it?

"A. No, sir."

It appears to me the "experts" in the field believed the legislature did not intend to make what the Boatrights did a crime. Certainly, the investigator for the Racing Commission did not think the statute gave clear guidelines. The legislature could have reached the result the majority does by stating "in the racing or training of greyhounds to race." The language used does not give an adequate warning to those in the greyhound industry of what conduct is prohibited.

The attorney general's opinion cited by the majority is not persuasive. It is devoted to defining training and never mentions the issue I find dispositive. The opinion concludes that, because training has its obvious meaning, the use of live lures is prohibited in teaching greyhounds to be racing greyhounds, regardless of racing experience. The opinion is not sound, is not persuasive, and is no authority for the majority's conclusion.

In conclusion, there is no commonly accepted definition of "racing greyhounds" in the industry or from other states. (Some states define "racing greyhounds" by statute or agency regulations.) Additionally, the Racing Commission's jurisdiction is over racing. The Commission has no jurisdiction over dogs until they arrive at the track or papers are submitted to the track. Article 88 of chapter 74 specifically states that the Kansas Parimutuel Racing Act, including the statute in question, K.S.A. 1991 Supp. 74-8810, "shall apply . . . to all greyhound race meetings at which parimutuel wagering is used or intended to be used." K.S.A. 1991 Supp. 74-8801.

Here, two separate trial judges independently heard this issue in different judicial districts and arrived at the same legal conclusion I do. I would affirm them.

LOCKETT and ALLEGRUCCI, JJ., join the foregoing dissenting opinion.