(873 P.2d 1365)
No. 70,093

LARRY L. FURTHMYER, *Appellant,* v. KANSAS DEPARTMENT OF
REVENUE, *Appellee.*
Rev'd 256 Kan. 825, 888 P.2d 832 (1995).

Opinion filed May 13, 1994.

*Michael S. Holland,* of Russell, for the appellant.

*Brian Cox,* of the Kansas Department of Revenue, for the appellee.

Before PIERRON, P.J., BRAZIL, J., and JOHN E. SANDERS, District
Judge, assigned.

PIERRON, J.: Larry Furthmyer appeals the trial court's decision
affirming the suspension of his driver's license for one year. Al-
though several issues were raised below, on appeal he raises only
one issue. He argues there must be a finding the suspendee was
operating the vehicle at the time of the offense which forms the
basis of the suspension. We agree and reverse and remand.

Rick Harter, a Russell police officer, observed appellant's car
stopped very close to a stop sign. After observing the vehicle
through a pair of binoculars, Harter approached it to investigate.

The front wheels were approximately one foot from the curb. The rear wheels were approximately three feet from the curb. When the officer approached, the vehicle was running and in gear. The appellant was slumped over the wheel, either asleep or passed out, with his hands in his lap and his foot on the brake. A female passenger in the vehicle was also passed out or asleep when the officer approached the car.

Harter finally roused the appellant, who told Harter to go away. Harter instructed him to roll down the window. When he did so, Harter reached into the vehicle, placed it in park, and shut off the motor. Harter smelled alcohol in the vehicle but did not recall that the odor of it came from the appellant. Harter did not conduct field sobriety tests. The appellant was arrested for driving while under the influence and subsequently was given a breath alcohol test. He did not blow a sufficient sample for a valid test. Harter interpreted this as a refusal to take the test and booked the appellant into jail.

The Kansas Department of Revenue (KDR) argues the appellant failed to preserve the issue of whether the hearing officer must find the appellant was driving the car. Issues not raised before the hearing officer may not form the basis of an appeal. *Zurawski v. Kansas Dept. of Revenue*, 18 Kan. App. 2d 325, 330, 851 P.2d 1385, *rev. denied* 253 Kan. 864 (1993). Routinely, there is no transcript made of these hearings. The parties must rely upon the hearing officer's notes to determine what occurred at the hearing. In this case, the appellant claims he stated to the hearing officer that he wished to preserve all statutory issues for appeal. The hearing officer's notes reflect this statement.

The hearing officer's form contains a section which allows the hearing officer to jot down the evidence supporting each of the statutory factors which must be proved before there can be a suspension. The first section is divided into three parts. The first section states:

"1. Law enforcement officer(s) had reasonable ground to believe that the respondent was operating or attempting to operate a motor vehicle while under the influence of alcohol, drugs or both."

In the instant case, this area on the officer's note sheet was filled in, which indicates the hearing officer received evidence

on this issue. This corroborates the appellant's contention that the issue was raised and preserved. In cases such as these, where the record is produced by the agency, we presume that an indication in the record that all legal issues were raised should be believed. The issue is properly before us.

This court must determine whether, in an action to suspend a driver's license pursuant to the implied consent law, K.S.A. 8-1001 *et seq.*, the Kansas Department of Revenue must prove the suspendee was "operating or attempting to operate" a vehicle at the time of the incident giving rise to suspension.

The appellant argues the implied consent law applies only to people operating or attempting to operate a vehicle. Essentially, his position is that without a determination the person was actually operating the vehicle, KDR has no jurisdiction to suspend a license. It appears the appellant is willing to draw a distinction between an officer's right to test an individual, based on the officer's reasonable belief the person was driving, and a suspension based on the test or its refusal when the person can prove he or she was not operating a vehicle. We agree that there is a distinction.

We must specifically determine if the *sanctions* imposed by the implied consent law apply only to a person who operates or attempts to operate a motor vehicle at the time the person refuses to submit to an alcohol concentration test appropriately requested by a police officer.

We wish to emphasize that the issue here revolves around the fact that the trial court has made no finding as to whether the appellant was or was not driving the vehicle. The sufficiency of the evidence tending to prove or disprove whether the appellant was driving is not before us.

At issue is the interpretation of our implied consent law. K.S.A. 1993 Supp. 8-1001 states in pertinent part:

"(a) Any person who operates or attempts to operate a vehicle within this state is deemed to have given consent, subject to the provisions of this act, to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs."

K.S.A. 1993 Supp. 8-1002 provides in pertinent part:

"(h)(1) If the officer certifies that the person refused the test, the scope of the hearing shall be limited to whether: (A) A law enforcement officer

had reasonable grounds to believe the person was operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs, or both, or to believe that the person had been driving a commercial motor vehicle, as defined in K.S.A. 8-2,128, and amendments thereto, while having alcohol or other drugs in such person's system; (B) the person was in custody or arrested for an alcohol or drug related offense or was involved in a motor vehicle accident or collision resulting in property damage, personal injury or death; (C) a law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001, and amendments thereto; and (D) the person refused to submit to and complete a test as requested by a law enforcement officer."

Several principles of statutory construction are applicable here:

" 'The fundamental rule of statutory construction is that the purpose and intent of the legislature governs when the intent can be ascertained from the statute. In construing statutes, the legislative intention is to be determined from a general consideration of the entire act. Effect must be given, if possible, to the entire act and every part thereof. To this end, it is the duty of the court, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious, and sensible.' " *State v. Walbridge,* 248 Kan. 65, 68, 805 P.2d 15 (1991).

"When determining whether a statute is open to construction, or in construing a statute, ordinary words are to be given their ordinary meaning and courts are not justified in disregarding the unambiguous meaning." *Boatright v. Kansas Racing Comm'n,* 251 Kan. 240, Syl. ¶ 7, 834 P.2d 368 (1992).

"It is presumed the legislature understood the meaning of the words it used and intended to use them; that the legislature used the words in their ordinary and common meaning; and that the legislature intended a different meaning when it used different language in the same connection in different parts of a statute." *Boatright,* 251 Kan. 240, Syl. ¶ 8.

"In order to ascertain the legislative intent, courts are not permitted to consider only a certain isolated part or parts of an act but are required to consider and construe together all parts thereof *in pari materia.* When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the literal import of words or phrases which conflict with the manifest purpose of the legislature." *Brown v. Keill,* 224 Kan. 195, 200, 580 P.2d 867 (1978).

" 'One of the more common rules of statutory interpretation is that expressed in the Latin maxim *expressio unius est exclusio alterius, i.e.,* the mention or inclusion of one thing implies the exclusion of another. This rule may be applied to assist in determining actual legislative intent . . . .' " *State v. Luginbill,* 223 Kan. 15, 20, 574 P.2d 140 (1977).

KDR argues its interpretation of the law is controlling and that courts must defer to an agency's interpretation of the law. KDR's interpretation of the implied consent law is entitled to great weight and consideration. However, construction of a statute is a judicial function which rests with the court. See *Podrebarac v. Kansas Dept. of Revenue*, 15 Kan. App. 2d 383, Syl. ¶ 2, 807 P.2d 1327 (1991).

Counsel for KDR has offered some ingenious interpretations of the statutory history to support its position. However, as a wise jurist once observed, if the legislative history of a law is not completely clear, nothing prohibits a court from considering the clear language of the statute.

K.S.A. 1993 Supp. 8-1001(a) expressly states: "Any person who operates or attempts to operate a motor vehicle within this state is deemed to have given consent" to a test for alcohol or drugs. Despite subsequent amendments to the implied consent law since its passage in 1955, 8-1001(a) has always provided that the individual who is deemed to have given consent to testing is "any person who operates a motor vehicle," or "any person who operates or attempts to operate a motor vehicle." The words "operating" and "driving" are synonymous terms. *State v. Fish*, 228 Kan. 204, 209, 612 P.2d 180 (1980).

K.S.A. 1993 Supp. 8-1002(h)(1) consistently refers to "the person" who refused the test. We read the two statutes together and conclude "the person" referred to in 8-1002(h)(1) is the person operating or attempting to operate the motor vehicle under 8-1001(a).

Although a law enforcement officer may have reasonable grounds to believe the person who refuses to submit to testing was operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs, or both, we hold that the refusal cannot be made the basis of suspending the person's driving privileges unless it is also determined that the person was actually operating or attempting to operate the vehicle.

Although not expressly so stating, our Supreme Court decisions imply that K.S.A. 8-1001 *et seq.* applies only to drivers and bolster our holding herein. In *State v. Bristor*, 236 Kan. 313, 319, 691 P.2d 1 (1984), Justice Schroeder opined:

"The very purpose of the implied consent law (K.S.A. 8-1001) is to coerce a *motorist* suspected of driving under the influence to 'consent' to chemical testing, thereby allowing scientific evidence of his blood alcohol content to be used against him in a subsequent prosecution for that offense. [Citation omitted.] For *drivers* who refuse, the purpose of the statute is to provide an effective means short of physical force to overcome the refusal. [Citation omitted.]" (Emphasis added.)

In *Standish v. Department of Revenue*, 235 Kan. 900, 904-05, 683 P.2d 1276 (1984), Justice Miller stated:

"We conclude that when, as in Kansas, state law deems that all *drivers* have given consent to chemical tests of blood or breath when arrested for driving while under the influence, and that if the person arrested refuses to submit to the test certain consequences follow, no constitutional right to consult counsel in order to determine whether to submit to the test attaches." (Emphasis added.)

Justice Herd opined in *State v. Garner*, 227 Kan. 566, 571, 608 P.2d 1321 (1980), that "K.S.A. 1979 Supp. 8-1001, enacted to combat the increasing problem of drunken *driving*, provides for implied consent to a chemical test of breath or blood for the purpose of determining the intoxication level of one arrested for drunken *driving*." (Emphasis added.) Justice Herd further stated, "K.S.A. 1979 Supp. 8-1001 provides the *operator of a vehicle* on the highway is deemed to have consented to the blood or breath test for the privilege of driving." 227 Kan. at 571. (Emphasis added.)

In *Lee v. State*, 187 Kan. 566, 570-71, 358 P.2d 765 (1961), Justice Price opined:

"The use of the public highways by motor vehicles, with its consequent dangers, renders the necessity of regulation apparent. Courts may take judicial notice of the problem, both local and national, of the drunken *driver* on the highways with its ever increasing toll of injuries and death. In line with many other states, Kansas, through its inherent police regulatory powers, in an effort to promote public safety and welfare, has seen fit to enact the statutes heretofore quoted or summarized—one of which, 8-1001, puts a choice to a *motorist* who is accused upon reasonable grounds of driving while under the influence of intoxicating liquor." (Emphasis added.)

Finally, in *State v. Fish*, 228 Kan. at 208-09, our Supreme Court stated:

"K.S.A. 1979 Supp. 8-1001 has to do with the consent of the operator of the vehicle to submit to a chemical test of breath or blood, to determine

the alcoholic content of his blood. In 8-1001 the word 'operating' is used but it should be noted that consent to take a blood sample is presumed provided the arresting officer has reason to believe that the person was *driving* under the influence of intoxicating liquor."

Our conclusion is also consistent with our opinion in *Sullivan v. Kansas Dept. of Revenue*, 15 Kan. App. 2d 705, Syl. ¶ 1, 815 P.2d 566 (1991), in which we stated:

"Suspension of a driver's license is proper if (1) the law enforcement officer had reasonable grounds to believe the *driver* operated a vehicle while under the influence of alcohol, (2) the *driver* was arrested for an alcohol-related offense, (3) the *driver* was presented the required oral and written notices, and (4) the *driver* refused to submit to the requested breath test." (Emphasis added.)

K.S.A. 1993 Supp. 8-1002(h)(1) and (2) set forth the scope of the administrative hearing in test refusal and test failure cases, respectively. We note 8-1002(h)(2) expressly provides that the person who fails a test for alcohol or drugs must be found to have been operating a motor vehicle before the person's drivers license can be suspended; it does not expressly so provide in the case of a test refusal. However, as a prerequisite to application of the sanctions imposed by the implied consent law, the person must have been driving or attempting to drive a motor vehicle as provided in 8-1001(a).

K.S.A. 1993 Supp. 8-1001(i) provides that 8-1001 is "remedial law and shall be liberally construed to promote public health, safety and welfare." We believe the construction we place upon the implied consent law is most appropriate to serve the public interest, especially in promoting the "designated driver" policy to protect the public safety and welfare. See *Garner*, 227 Kan. at 571.

"Although the laws against driving while intoxicated are interpreted broadly in the public interest, public policy also encourages people who have been drinking to find another person to drive. [citation omitted] . . . '[T]he real purpose of the [implied consent law] is to deter individuals who have been drinking intoxicating liquor from getting into their vehicles, *except as passengers.*'" *Hansen v. Commissioner of Public Safety*, 478 N.W.2d 229, 231 (Minn. App. 1991) (Emphasis in original.)

A drunken passenger who has designated a driver but refuses an alcohol concentration test should not receive the sanction imposed upon the drunken driver who refuses to submit to testing.

We are not adding a requirement to the provisions of the implied consent law that is not already expressly contained in the plain language of K.S.A. 8-1001(a). See *Podrebarac v. Kansas Dept. of Revenue*, 15 Kan. App. 2d at 385-86; *State v. Kristek*, 14 Kan. App. 2d 77, 79, 781 P.2d 1113 (1989); *Woodhead v. Kansas Dept. of Revenue*, 13 Kan. App. 2d 145, 147, 765 P.2d 167 (1988). Further, we do not find a conflict exists between 8-1001(a) and 8-1002(h) requiring that the latter control over the former. See *Read v. Miller*, 247 Kan. 557, 559, 802 P.2d 528 (1990). The two statutes must be construed together to determine to whom the sanctions imposed by the implied consent law apply.

Although a purpose of the implied consent law is to gather evidence to facilitate the criminal prosecution of the motorist for DUI or a related offense, the construction we place upon the implied consent law will not hamper the prosecution of individuals suspected of driving or attempting to drive while intoxicated. A chemical test failure is only one means by which the prosecution may prove its case. K.S.A. 1993 Supp. 8-1567(a).

There are several statutes that impose a sanction of driver's license suspension for non-driving conduct. K.S.A. 8-241; K.S.A. 1993 Supp. 8-247; K.S.A. 1993 Supp. 8-295; K.S.A. 8-1609; K.S.A. 1993 Supp. 8-2107; K.S.A. 8-2110; K.S.A. 12-4301; K.S.A. 40-3104; K.S.A. 41-2719. However, K.S.A. 1993 Supp. 8-1001(a) expressly states: "Any person who operates or attempts to operate a motor vehicle" is deemed to have given consent to testing. This plain language includes drivers and excludes non-drivers from the imposition of sanctions for a test refusal. See *Luginbill*, 223 Kan. at 19-20. We cannot rewrite the legislation. *State v. Erbacher*, 8 Kan. App. 2d 169, 172, 651 P.2d 973 (1982).

Implied consent statutes are in effect in all 50 states. Note, *The New Kansas DUI Law: Constitutional Issues and Practical Problems*, 22 Washburn L.J. 340, 345 (1983). The central feature of these statutes is that a driver impliedly consents to a chemical test for intoxication by operating a motor vehicle on public roads. Jurisdictions that have addressed the issue under statutes employing similar language are split on whether the implied consent law applies to a person who was not driving and refuses to submit to testing. Pennsylvania and Vermont have determined that the sanctions imposed by their respective implied consent laws can

apply to a person found not to be driving. *Bur. of Traffic Saf. v. Goldman*, 86 Pa. Commw. 14, 17-18, 482 A.2d 1383 (1984); *Shaw v. Vermont District Court*, 152 Vt. 1, 3-4, 563 A.2d 636 (1989).

Alaska, California, Colorado, and Iowa have concluded that a person's driver's license can be revoked under the person's respective implied consent statutes or municipal ordinances only when the individual is found to be driving. *Patterson v. Municipality of Anchorage*, 815 P.2d 390, 394 (Alaska App. 1991); *Mercer v. Department of Motor Vehicles*, 53 Cal. 3d 753, 768-69, 280 Cal. Rptr. 745, 809 P.2d 404 (1991); *Marin v. Dep't. of Revenue*, 41 Colo. App. 557, 559-60, 591 P.2d 1336, (1978), *cert. denied* (1979); *Furry v. Iowa Dept. of Transp., MVD*, 464 N.W.2d 869, 872-73 (Iowa 1991).

The majority of states which have considered this question has considered it in the context of passengers—that is, whether a passenger who refuses an alcohol concentration test can be subject to suspension. However, it seems clear that holding there must be proof the suspendee was operating or attempting to operate a vehicle will serve the purpose of punishing drunk drivers while allowing passengers who are intoxicated to keep their license. Further, a contrary result punishes people who select a designated driver. It could also punish those who choose to "sleep it off" in their car. The clear language of the statutes in question show this is not the legislative intent.

There is no real issue in this case concerning whether the officer had reasonable grounds to believe that the appellant was operating or attempting to operate a motor vehicle while under the influence of alcohol, drugs, or both. However, the evidentiary question of whether he actually was doing so is an issue that must be resolved by the factfinder before the issue of suspension can be addressed.

We therefore reverse and remand for a determination by the trial court of whether the appellant was operating or attempting to operate a motor vehicle at the time in question.