(935 P.2d 242)

No. 75,201

JASON SPENCER, A Minor Child, By His Parent and Next Friend, Debbie Spencer, *Appellant*, v. UNIFIED SCHOOL DISTRICT NO. 501, *Appellee*.

Opinion filed April 4, 1997.

*Craig E. Collins*, of Topeka, for appellant.

*Charles N. Henson* and *Donald S. Lee*, of Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, of Topeka, for appellee.

Before ELLIOTT, P.J., GERNON, J., and DAVID F. BREWSTER, District Judge, assigned.

ELLIOTT, J.: Jason Spencer appeals the district court's decision affirming his extended suspension from Topeka West High School for possession of a look-alike handgun on school property. We affirm.

Jason was suspended for the remainder of the 1995 school year based upon an incident that occurred in February 1995. While Jason and two other students were eating lunch in Jason's car in

the school parking lot, one of his passengers removed a pellet pistol which looked like a real handgun from underneath the front seat. Both during the lunch break and again after school, the passenger pointed the gun at friends who laughed, knowing the gun was not a threat. A parent saw the gun and reported Jason's license tag number to school security. Jason was cooperative in the ensuing investigation by school officials.

The notice of Jason's suspension listed two causes: a code 40 violation of "[u]nruly conduct that disrupts school" and a code 60 violation of "[o]ther matters covered by K.S.A. 72-8901 *et seq.*" Student Handbook of Board of Education Policies and Administrative Regulations, Topeka Public Schools, p. 13 (1994-95). The principal imposed an extended suspension, finding that "[t]he charge of possession of a look-alike handgun is sustained based on Jason's own statement." Jason appealed his extended suspension to the U.S.D. No. 501 Board of Education (Board). After an evidentiary hearing, the Board affirmed Jason's extended suspension. Jason appealed to the district court, which upheld the Board's action.

Jason's first argument on appeal is that the Board acted beyond its authority and beyond the authorized scope of its review in finding that he had committed an offense of which he had been "acquitted" by the principal. Jason interprets the principal's finding that Jason possessed a look-alike handgun to mean that he committed a code 60 violation only. In other words, because the principal did not specifically state that Jason had engaged in unruly conduct which disrupted school, Jason argues that he impliedly acquitted Jason of that charge.

We do not agree with Jason's interpretation of the notice of his suspension or of the principal's finding. The two code violations listed in the notice of suspension do not constitute separate and distinct offenses. Rather, Jason's conduct was alleged to be in violation of both codes. Furthermore, a code 60 violation which is based upon grounds covered by K.S.A. 1994 Supp. 72-8901 includes "conduct which substantially disrupts, impedes or interferes with the operation of any public school" or "conduct which . . . substantially impinges upon or invades the rights of others at

school, on school property, or at a school supervised activity." K.S.A. 1994 Supp. 72-8901(b), (c). Thus, a code 40 violation of unruly conduct that disrupts school actually falls within a code 60 violation.

We conclude that while the principal did not specifically state which code Jason had violated, he did not impliedly acquit Jason of engaging in unruly conduct that disrupts school. The Board did not act beyond its authority or beyond the scope of its review in hearing evidence on whether Jason's conduct disrupted school or impinged on the rights of others.

Jason's next argument is that K.S.A. 1994 Supp. 72-8901(b) is unconstitutionally vague. He specifically challenges that portion of the statute which provides that a student may be suspended for "conduct which substantially disrupts, impedes or interferes with the operation of any public school." K.S.A. 1994 Supp. 72-8901(b). He contends this language does not provide him fair warning of what kind of conduct is prohibited and is susceptible to arbitrary enforcement by school officials.

Interpretation of statutes is a question of law over which this court may exercise unlimited review. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). "[A] statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it may be struck down." *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 243, 834 P.2d 368 (1992).

The United States Supreme Court addressed the issue of vagueness of school regulations in *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 678, 92 L. Ed. 2d 549, 106 S. Ct. 3159 (1986). There, a student challenged a school regulation prohibiting "[c]onduct which materially and substantially interferes with the educational process . . . including the use of obscene, profane language or gestures." The *Bethel* court held:

"We have recognized that 'maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relation-

ship.' *New Jersey v. T.L.O.*, 469 U.S. at 340. *Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions.* [Citation omitted.]" (Emphasis added.) 478 U.S. at 686.

We agree with the district court that the school need not have a regulation specifically prohibiting the possession of look-alike handguns and that under the broad standard set out in *Bethel*, K.S.A. 1994 Supp. 72-8901(b) is not unconstitutionally vague.

Jason's final argument on appeal is that the Board's findings were not supported by substantial competent evidence. The essence of Jason's argument is that the school presented no evidence that Jason's conduct caused an actual disruption in the operation of the school; rather, school officials testified that Jason's conduct could have caused such a disruption if students who saw the gun thought that it was real. Jason also contends that it is improper to consider the school's investigative efforts as a disruption in the operation of the school.

This argument presents the closest issue in this case. While it seems a matter of common sense that allowing a look-alike handgun to be pointed from one's car on school property certainly could cause a disruption in the operation of a school, the evidence of an actual disruption in the instant case was slight. At most, the evidence showed that one parent saw the gun and contacted school security. There was no evidence that any student ever perceived the gun as a threat or mistook it for a real gun.

Furthermore, Jason's argument that the school's investigative efforts should not be considered as a disruption to the operation of the school is well taken. No student has control over whether school officials decide to expend time and energy investigating that student's actions. The school should not be able to deem a student's actions disruptive simply because the school chose to investigate. If the student's actions turn out to be harmless, the school could still deem them disruptive simply because of the time and energy expended in investigating. Such a result would be unfair.

There is, however, a flaw in Jason's argument regarding the sufficiency of evidence. The Board did not find simply that Jason had

engaged in conduct which disrupted school; it also found that Jason's conduct had impinged upon or invaded the rights of others. This finding alone is sufficient to support Jason's extended suspension.

The evidence in this case does support a finding that Jason's conduct impinged on the rights of parents and students to feel safe in their school environment. Here, the potential effect of Jason's conduct is an appropriate consideration. The principal testified regarding the importance of a safe school environment and how Jason's misconduct had chipped away at that safe environment by creating a sense of fear that guns might be present on school grounds. The principal testified that both parents and students have a right to feel safe at the school and Jason's behavior had impinged on those rights. The principal's testimony provides the substantial competent evidence necessary to support the Board's finding.

Affirmed.