The Honorable James E. Lowther State Representative, 60th District Chairman, Legislative Post Audit Committee State Capitol, Room 183-W Topeka, Kansas 66612
Dear Representative Lowther:
As the chairman of the legislative post audit committee, you have requested our opinion regarding the legality of investing state idle funds in the municipal investment pool fund. Specifically, you ask whether investment of state idle funds in the municipal investment pool would be legal and prudent under the investment policies adopted by the pooled money investment board.
You raise this question in the wake of the recent decision of the pooled money investment board to amend its policy governing the investment of state idle funds to expressly permit investment of such funds in the municipal investment pool. As amended on January 30, 1995, the board's policy permits investment of up to 20 percent of the state's idle funds or $250 million, whichever is the lesser amount, in the municipal investment pool.
The board's policy amendment followed the recent release of a performance audit report by the legislative division of post audit which examined the investment practices of the municipal investment pool fund. You enclosed a copy of the performance audit report with your opinion request. In addition, you provided us with a copy of a legal opinion issued January 27, 1995 by the department of administration legal section. Finally, you submitted a copy of the written policy of the pooled money investment board for investing state idle funds, in its form prior to the board's recent amendment. The state treasurer's office has supplied us with the portion of the minutes reflecting the board's decision to amend its written policy.
The state treasurer's office has also provided us a copy of a proposed resolution that was submitted for the board's consideration but that was not approved. The proposed resolution would have directed the deposit of state idle funds in the municipal investment pool in an unspecified amount not to exceed the limitations noted above. Also, the state treasurer's office has submitted a copy of the Report on the State of KansasMunicipal Investment Pool dated January 24, 1995, prepared by William M. Mercer Asset Planning, Inc. The Mercer report was prepared to fulfill the statutory requirement that the office annually contract for a performance review of investments in the municipal investment pool fund. See K.S.A. 1994 Supp.12-1677a(g). Finally, the state treasurer has provided us with copies of published financial reports for fiscal year 1994.
We begin with a brief summary of the pertinent legislative history. Following a 1991 interim study by the legislative budget committee, the 1992 legislature made comprehensive revisions to statutes dealing with public moneys. See generally Report onKansas Legislative Interim Studies to the 1992 Legislature (Kansas Legislative Research Department, December 1991), Re: Proposal No. 17 — Idle Funds Investments (hereinafter "1991 Interim StudyReport"). By enactment of 1992 senate bill no. 480 (L. 1992, ch. 146) the legislature established the municipal investment pool fund in the state treasury and delegated the responsibility for management and investment of moneys in the fund to the pooled money investment board. See K.S.A. 1994 Supp. 12-1677a(a), (b), (i). The statutes impose specific restrictions and conditions on the board's authority to invest moneys deposited in the fund. See
K.S.A. 1994 Supp. 12-1677a(b), (f), (h), (j).
The municipal investment pool fund was created for the purpose of providing an additional option to specified local governmental entities for investing moneys not immediately required for the purpose for which they were collected or received, generally known as "idle funds." See K.S.A. 1994 Supp. 12-1675(a), (b)(6). By pooling their idle funds for investment, municipalities were offered the opportunity to benefit from such advantages as economies of scale, professional investment expertise, increased diversification, and greater liquidity. Pursuant to the authorizing legislation, interest earnings on the municipal investment pool fund are credited to the individual accounts of the participating municipalities on a prorated basis. K.S.A. 1994 Supp. 12-1677a(c). Gains realized from the disposition of investments are to be deposited in a reserve fund, from which transfers are to be made to offset losses to the pool fund. K.S.A. 1994 Supp. 12-1677a(d).
Under a separate set of preexisting statutes known as the state moneys law, K.S.A. 75-4201 et seq., the pooled money investment board is also charged with the general responsibility for managing and investing state moneys. K.S.A. 1994 Supp. 75-4201
specifically defines certain terms used in that act. "State moneys" is defined to include all moneys in the treasury of the state or coming lawfully into the possession of the state treasurer. K.S.A. 1994 Supp. 75-4201(e). The term therefore includes moneys deposited with the state treasurer for investment in the municipal investment pool fund, as provided by K.S.A. 1994 Supp. 12-1677a(a). However, because the latter statute contains specific provisions governing the pooled money investment board in managing investments of the municipal investment pool, the separate and different provisions of the state moneys law dealing with investments do not apply to that fund.
The term "state idle funds" is notably absent from the terms defined by the state moneys law. However, other categories of state moneys are specifically defined. For example, "custodial moneys" are "state moneys deposited with the treasurer which, in the written opinion of the attorney general, are required by contract, bequest, or law to be segregated from other bank accounts." See K.S.A. 1994 Supp. 75-4201(f). One clear example of a custodial account is the health care stabilization fund, which by statute must be held in trust in a segregated fund in the state treasury, with interest credited directly to the fund. See
K.S.A. 1994 Supp. 40-3403(a); K.S.A. 40-3406. Bond proceeds, reserve funds, and surplus funds may also be considered custodial moneys if the particular agreement, indenture, or resolution authorizing their issuance requires such moneys to be maintained in segregated accounts. On a number of occasions, the attorney general has issued written opinions determining that particular moneys must be deposited in custodial accounts, with the interest earnings credited to those accounts. See, e.g., Attorney General Opinions No. 81-195 (funds generated from operations of university dormitories financed with bond revenues); 81-201 (employment security fund); 82-202 (Kansas fish and game commission mined-land donation fund). K.S.A. 1994 Supp. 75-4213 provides that the chairperson of the pooled money investment board shall request such an opinion from the attorney general under certain circumstances, and generally restricts investments of custodial moneys to demand or interest-bearing deposits and certain kinds of repurchase agreements. However, statutes that specifically establish custodial funds may provide somewhat different investment authority, as is the case with the health care stabilization fund. See K.S.A. 40-3406. The state moneys law specifically excludes custodial accounts from moneys otherwise eligible for investment under that act. K.S.A. 1994 Supp.75-4201(j), 75-4209(a).
Under the state moneys law, interest earnings on state moneys are credited to the state general fund except as otherwise required by contract, law, or bequest. K.S.A. 75-4210a. Custodial accounts are one exception to this general rule. In addition, a number of separate statutes establish specific funds to be used by particular state agencies or public entities for special purposes, the investment of which is delegated to the pooled money investment board with interest earnings and investment income accruing directly to the specific fund. These are commonly known as "special funds." See 1991 Interim Study Report. The statutes establishing such funds also prescribe the particular manner in which moneys in those funds may be invested, which differs from the investment methodology set forth in the state moneys law.See, e.g., K.S.A. 68-2324 (state highway fund); K.S.A. 1994 Supp. 79-4804 (economic development initiatives fund). In our opinion, the municipal investment pool fund fits within the category of special funds. We note that the legal distinction between "custodial moneys" as defined by K.S.A. 1994 Supp.75-4201(f) and the term "special fund" as it has been commonly used is not entirely clear. In general, however, the statute or instrument establishing a custodial fund or account must clearly provide, in unequivocal language, that moneys deposited in the fund must be segregated from other moneys in the state treasury.See Attorney General Opinions No. 81-201; 85-128.
Thus, the general term "state moneys" includes three primary categories. The first and narrowest category, defined in the statute as "special moneys," includes "custodial moneys" which as a matter of law must be deposited in a segregated fund and separately invested, with interest earnings credited directly to the fund itself. See K.S.A. 1994 Supp. 75-4201(f) (defining "custodial moneys"); (g) (defining "special moneys"); (m) (defining "custodial account"); K.S.A. 1994 Supp. 75-4213 (deposit and investment of custodial accounts). The second category is generally known as "special funds." These non-custodial funds are expressly established by statute apart from the state moneys law, and their investment is separately delegated to the pooled money investment board, with interest earnings credited directly to the special fund. The investment of moneys deposited in such funds is typically subject to restrictions imposed by the same set of statutes that create the special fund itself. The third and most general category includes all other state moneys for which specific investment authority is not otherwise provided by statute, and which are therefore invested by the board pursuant to the state moneys law, with the interest earnings and other income generally credited to the state general fund pursuant to K.S.A.75-4210a. This category also includes numerous separate funds in the state treasury for which special investment authority does not exist, but the law nevertheless provides that a proportionate amount of interest generated to the state general fund must be transferred monthly to the credit of the separate fund. See,e.g., K.S.A. 32-992(a)(1), (b) (wildlife conservation fund). As we understand the term "state idle funds" as used by the board in its written investment policy, the term refers only to surplus moneys in the third and most general category of "state moneys."
Because investment decisions regarding both state idle funds and moneys in the municipal investment pool fund are statutorily delegated to the pooled money investment board, an understanding of the statutory structure and functions of the board is also important to provide the context for our response to your questions.
Under present law, as amended in 1992, the pooled money investment board is composed of five members. Four members are appointed by the governor to staggered four-year terms, subject to confirmation by the senate. K.S.A. 1994 Supp. 75-4221a(a). By statute, the state treasurer serves as the fifth member. Id. Effective July 1, 1992, at least three of the members appointed by the governor must each have at least five years of work experience as an investment or trust officer, or must be professionally qualified as a certified public accountant or a certified financial planner.Id.
The state treasurer is designated by law to chair the pooled money investment board. K.S.A. 1994 Supp. 75-4222(b). Effective July 1, 1992, the legislature shifted responsibility for the administrative supervision and control of the board from the secretary of administration to the state treasurer. L. 1992, ch. 261 sec. 1(d). Consequently, under present law the board's budgeting, purchasing, and related management functions are generally carried out by the state treasurer. K.S.A. 1994 Supp.75-4222(d). Also effective July 1, 1992, the board has statutory authority to appoint investment officers and investment analysts, who by law must be in the unclassified civil service. L. 1992, ch. 261, sec. 1(b); see K.S.A. 1994 Supp. 75-4222(b).
Thus, the pooled money investment board is now more closely aligned with the state treasurer's office than it was prior to July 1, 1992. Nevertheless, the state treasurer is but one of five members of the pooled money investment board, and decisions regarding investments are delegated by statute not to the state treasurer acting alone, but to the five-member board.
With this background in mind, we address your first inquiry in terms of whether the pooled money investment board may lawfully take action to invest state idle fund moneys in the municipal investment pool fund. As we understand the facts, the board itself has not directed such an investment; rather, the board's action on January 30, 1995 simply amended its investment policy for state idle funds to expressly add the municipal investment pool fund to the list of permitted investments. We have been advised, however, that the state treasurer has initiated investments of state idle fund moneys in the municipal investment pool, beginning January 30, 1995.
The legislature has expressly authorized certain kinds of governmental entities to invest their idle funds in the municipal investment pool fund established by K.S.A. 1994 Supp. 12-1677a:
 "The governing body of any county, city, township, school district, area vocational-technical school, community college, firemen's relief association, community mental health center, community facility for the mentally retarded or any other governmental entity, unit or subdivision in the state of Kansas having authority to receive, hold and expend public moneys or funds may invest any moneys which are not immediately required for the purposes for which the moneys were collected or received, and the investment of which is not subject to or regulated by any other statute." K.S.A. 1994 Supp. 12-1675(a) (emphasis added).
As previously discussed, the 1992 legislature added the municipal investment pool fund to the statutory list of options available to such governmental entities for investing their idle funds.See K.S.A. 1994 Supp. 12-1675(b)(6).
In our opinion, K.S.A. 1994 Supp. 12-1675, standing alone, does not provide authority to the pooled money investment board to invest state idle funds in the municipal investment pool fund. While the pooled money investment board is a governmental entity in the state of Kansas with the statutory authority to receive, hold, and expend state moneys, the board's authority to invest state moneys is subject to and regulated by other statutes, in particular K.S.A. 75-4201 et seq., the state moneys law. Further, the board's authority to invest special funds is governed by the particular statutes establishing them. Therefore, state moneys, including state idle funds, are excluded from the scope of K.S.A. 1994 Supp. 12-1675(a) by the terms of the final clause of that subsection.
We next turn to K.S.A. 75-4201 et seq., the state moneys law. Under these statutes, the pooled money investment board is required to designate banks to receive deposits of state moneys in state "operating accounts," which are those payable on demand, and state "investment accounts," which by definition are not payable on demand. See K.S.A. 1994 Supp. 75-4201(i), (j) (defining terms); 75-4208 (procedures for designating banks). Because operating accounts must be exclusively established in banks, see
K.S.A. 1994 Supp. 75-4205, 75-4208, the statutes do not permit the pooled money investment board to create an operating account in the municipal investment pool fund for the deposit of state idle funds.
The next question is whether the board may establish an investment account in the municipal investment pool for state idle funds. K.S.A. 1994 Supp. 75-4209 sets forth the procedures to be undertaken by the pooled money investment board prior to investing "eligible moneys," or more loosely state idle funds, in investment accounts. After making certain determinations of investment policy pursuant to rules and regulations, the board is required to offer such state moneys to qualified banks on a competitive basis, at maturities no longer than four years. K.S.A. 1994 Supp.75-4209(a)(1), (g). The remainder of such eligible moneys may be invested by the board as provided in the statute, which lists a number of investment alternatives including U.S. government securities; repurchase agreements; SKILL act projects; state agency bonds and bond projects under certain circumstances; preferred stock of Kansas venture capital, inc., not to exceed $ 10 million; and loans pursuant to legislative mandates, not to exceed the lesser of 10 percent of state moneys eligible for investment, or $ 80 million. We find no language in K.S.A. 1994 Supp. 75-4209 that would permit the board to create "investment accounts" for state idle funds in the municipal investment pool fund.
The maxim of statutory interpretation known as "expressio unius est exclusio alterius" teaches that when a statute specifies certain things, it may be inferred that things not mentioned were intentionally excluded. Breedlove v. General Baking Co.,138 Kan. 143, 145 (1933); Black's Law Dictionary 581 (6th ed. 1990). While application of the rule is not conclusive, Kansas courts have sanctioned its use as an auxiliary rule of statutory construction if legislative intent is not otherwise clear. See Johnson v.General Motors Corp., 199 Kan. 720, 722 (1967). We think the rule is particularly applicable in construing K.S.A. 1994 Supp.75-4209, because the statute has been the recent subject of comprehensive review and amendment by the legislature for the very purpose of expanding the board's authority to place state idle moneys in particular kinds of investments. We therefore conclude that the alternatives listed in K.S.A. 1994 Supp. 75-4209 for the investment of state idle funds, more specifically defined in the statute as state moneys "eligible for investment accounts," are intended by the legislature to be exclusive options. Because the municipal investment pool fund is not listed therein, K.S.A. 1994 Supp. 75-4209 does not authorize the board to invest state idle funds in the pool.
Finally, we turn to K.S.A. 1994 Supp. 75-4263, the statute upon which department of administration counsel relied in concluding that the board may invest state idle funds in the municipal investment pool. The cited statute reads as follows:
 "Moneys of a state agency or public instrumentality of this state which may be invested by the pooled money investment board expressly for such agency or instrumentality, or invested directly by the agency or instrumentality, may be invested in the municipal investment pool fund established in K.S.A. 1994 Supp. 12-1677a and amendments thereto. Such agency or instrumentality shall be treated as a municipality for purposes of participation in such fund." K.S.A. 1994 Supp. 75-4263.
The language of this provision, as it pertains to moneys invested by the pooled money investment board, appears to include only those moneys held by the board for a particular agency, rather than state idle funds in general. Since the intended meaning of the statute is susceptible of more than one construction and is certainly not clear, it is appropriate to consult the legislative history to determine the legislature's intent. See Boatright v.Kansas Racing Comm., 251 Kan. 240, Syl. para. 6 (1992); Jacksonv. City of Arkansas City, 235 Kan. 278, 318 (1984).
The statute was enacted by the 1993 legislature as new section 10 of 1993 senate bill 139 (L. 1993, ch. 207, sec. 10). The bill was introduced at the request of the state treasurer by the senate committee on financial institutions and insurance. In addition to making a number of technical and clarifying amendments to the comprehensive legislation on public moneys enacted the previous legislative session, sections 6 and 9 of the bill conferred new authority to the pooled money investment board to invest state idle funds in "state of Kansas investments in lifelong learning" (SKILL) act projects and bonds, financed by the Kansas development finance authority. See K.S.A. 74-8901 et seq., K.S.A. 1994 Supp.74-8920. Section 6 of the bill specifically amended K.S.A. 1992 Supp. 75-4209 to add such projects to the list of authorized options for investment of state idle funds. Section 9, now codified at K.S.A. 1994 Supp. 74-8920, set forth certain conditions to be met for such projects and bonds to be eligible for investment by the board.
Section 10 was not part of the bill originally introduced at the request of the state treasurer. After an initial hearing was held on the bill on February 3, 1993, it was referred to a subcommittee for study. On February 17, 1993, the subcommittee submitted proposed balloon amendments to the committee, including new section 10. The committee adopted the suggested amendments, and the wording of section 10 remained intact throughout the legislative process until it was eventually enacted into law. Noticeably absent from the minutes of the senate committee's meeting on February 17, 1993 are any remarks regarding the purpose or intent of new section 10.
The house committee on financial institutions and insurance heard testimony on the bill on March 10, 1993. The state treasurer's written testimony to the committee included an explanation of how each section of the bill changed the laws as previously amended by 1992 senate bill 480, and designated the particular type of public moneys affected. Sections 6 and 9 of the bill were noted as affecting state idle funds, as were a number of other sections of the bill. Section 10, however, was described in the state treasurer's written testimony as follows:
"Section 10
 Issue: Allows for use of the Municipal Investment Pool by certain state agencies.
 Type: State Special Funds" (Emphasis in original.)
In another document presented to the house committee, the state treasurer described section 10 simply as follows: "This change allows agencies or instrumentalities with express investment authority to utilize the Municipal Investment Pool." In the committee minutes of the hearing, the bill is described as follows:
 "This bill relates to the investment of idle funds of local governments and the state. Two new statutes would allow participation in the Municipal Investment Pool Fund by certain state agencies and instrumentalities of this state and would permit state moneys to be reinvested in specified projects and bonds." (Emphasis added.)
Absent any other evidence of legislative intent to the contrary, the state treasurer's written testimony to the house committee regarding the impact of section 10 supports our conclusion that the legislature intended it to apply only to those state moneys generally known as special funds. See 1991 Interim Study Report. In addition, the statute was intended to clarify that agencies and public instrumentalities with authority to directly invest their funds, such as the development finance authority, may invest those funds in the municipal investment pool. See, e.g., K.S.A. 1994 Supp. 74-8904(n). We conclude that while K.S.A. 1994 Supp. 75-4263 does not authorize the pooled money investment board to invest state idle funds in the municipal investment pool fund, it does provide authority for the board to invest special funds in the pool.
We have carefully considered the opinion rendered by the department of administration attorney, and we believe his more generous interpretation of K.S.A. 1994 Supp. 75-4263 is a plausible construction if the statute is read literally and in isolation. However, as the Kansas supreme court has consistently stated, the fundamental rule of statutory interpretation, to which all others are subordinate, is to ascertain the intent of the legislature. E.g., City of Wichita v. 200 South Broadway, Ltd.Partnership, 253 Kan. 434, 436 (1993); West v. Collins,251 Kan. 657, 661 (1992). In interpreting legislative intent, we are not limited to the language of the statute, but may consider such factors as its historical background, the circumstances attending its passage, and the purpose it was intended to accomplish. Id. at 666. Further, in construing statutes, the legislative intent must be determined from a general consideration of the entire act. If possible, effect must be given to all parts of the act, and its various provisions must be reconciled to make them consistent, harmonious, and sensible. United Steelworkers of America, LocalNo. 4706 v. Kansas Comm. on Civil Rights, 253 Kan. 327, 330
(1993); State ex rel. Stephan v. Kansas Racing Comm.,246 Kan. 708, 719 (1990); see Havens v. Board of Adult Care HomeAdministrators, 17 Kan. App. 2d 527, 529, rev. denied, 252 Kan. 1091
(1992).
Applying these canons of statutory construction to section 10 of L. 1993, ch. 359, we believe the only sensible interpretation of the statute, in the context of the entire act of which it was a part, is that it authorizes the board to invest only state special funds in the municipal investment pool fund. If the legislature had intended to authorize investment of state idle funds in the municipal investment pool fund, it could easily have done so in the same act simply by adding an additional subdivision to K.S.A.75-4209(a)(2), just as it did to expressly permit investments of state idle funds in SKILL act projects and bonds.
We conclude that the board is authorized by K.S.A. 1994 Supp.75-4263 to invest "state moneys" in the municipal investment pool, but only insofar as the term refers to moneys deposited in special funds. Special funds are those established by separate legislation that does not explicitly require the fund to be segregated from other accounts, but which does provide separate investment authority to the pooled money investment board apart from the state moneys law, as well as requiring investment earnings to be credited directly to the fund.
It is important to understand the implications of the distinction we draw between special funds and state idle funds. If the board decides to invest surplus balances in any special fund in the municipal investment pool pursuant to the authority conferred by K.S.A. 1994 Supp. 75-4263, interest earnings to the pool must be credited to each special fund so invested. This is because the last sentence of that statute provides that the state agency or public instrumentality for which the board invests those funds is deemed a municipality for purposes of K.S.A. 1994 Supp. 12-1677a. Furthermore, any gains realized on investments of special fund moneys in the pool would be transferred to the municipal investment pool reserve fund and would therefore not accrue directly to the benefit of the special fund. Finally, K.S.A. 1994 Supp. 12-1677a(d) permits the state treasurer to assess up to one percent of any interest earnings on the municipal investment pool fund for reimbursement of expenses of administering the fund. If state idle funds were authorized for investment in the municipal investment pool, these factors would affect interest and other income that would otherwise accrue to the state general fund under K.S.A. 75-4210a. However, the investment of special fund moneys in the municipal investment pool would have no effect on the state general fund.
You have also asked whether an investment of state idle funds in the municipal investment pool would be prudent. Whether a specific investment complies with any particular variation of the prudent man standard is an issue of fact, the determination of which is not within the scope of our statutory duty in issuing this opinion. See K.S.A. 75-704; III Scott, The Law of Trusts, sec. 227.1, at 436 (4th ed. 1988). Moreover, because we have determined that the applicable statutes do not permit the investment of state idle funds in the municipal investment pool fund, the prudence of such an investment is a moot issue.
Your letter also suggests the possibility of a breach of fiduciary duty. We agree that the pooled money investment board stands in the role of a fiduciary in the exercise of its duty to invest state idle funds, state special funds, and the municipal investment pool. As such, the board's investment decisions are governed by the general common law duties applicable to all trustees. In particular, the board has a separate duty of undivided loyalty to the various government beneficiaries of each fund to act solely within their best interests. See generally
Bogert, The Law of Trusts and Trustees, sec. 612 (rev. 2d ed. 1980); III Scott, supra, sec. 227.16; Restatement (Second) of Trusts sec. 170 comment r (1959); Restatement (Third) of Trusts sec. 170 comment r (1990). Specifically, the board's duty of loyalty to each fund requires that any transaction undertaken between them must be justified as fair to both. Id.
In summary, we conclude that the municipal investment pool fund is not a permissible investment of state idle funds, as that term is herein defined. However, K.S.A. 1994 Supp. 75-4263 does authorize the pooled money investment board to invest state special funds in the municipal investment pool. Special funds are non-custodial funds established by state statutes for a particular purpose, the investment of which is separately delegated to the pooled money investment board apart from the state moneys law, with interest earnings and other income accruing directly to the fund. As a fiduciary with regard to the various funds it invests, the pooled money investment board has a separate duty of loyalty to the respective beneficiaries of each of those funds.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 J. Lyn Entrikin Goering Assistant Attorney General
CJS:JLM:LEG:bas