(256 P.3d 876)
No. 103,667

BRYCE J. KATZ, *Appellee*, v. KANSAS DEPARTMENT OF REVENUE, *Appellant*

Opinion filed May 6, 2011.

*Matt Franzenburg*, of Legal Services Bureau, of Kansas Department of Revenue, of Topeka, for appellant.

*Terrence J. Campbell*, of Barber Emerson, L.C., of Lawrence, for appellee.

BEFORE BUSER, P.J., STANDRIDGE, J., and BUKATY, S.J.

BUSER, J.: In 2007, Bryce J. Katz was involved in an early morning automobile accident outside a Lawrence bar. A short time later,

he was arrested for driving a motor vehicle while under the influence of alcohol. After his arrest, he failed an Intoxilyzer 5000 breath alcohol test and was informed by the Kansas Department of Revenue (KDR) that his driving privileges would be suspended. In 2008, at the conclusion of an evidentiary hearing, an administrative hearing officer for KDR suspended Katz' driving privileges.

Katz appealed to the district court which reversed the suspension order and reinstated his driving privileges. The district court found the test result of .203 alcohol concentration did not reflect the amount of alcohol in Katz' breath at the time he was operating his motor vehicle. Rather, the district court found that Katz "consumed copious amounts of alcohol after driving," but before the test, which resulted in the test failure. As discussed below, based on these findings, the district court held KDR's suspension order was not supported by substantial evidence, was unreasonable, arbitrary, and capricious, involved an erroneous interpretation or application of law, and violated substantive due process of law.

KDR filed a timely appeal.

We reverse the district court's judgment and remand with directions to reinstate KDR's order suspending Katz' driving privileges.

### FACTUAL AND PROCEDURAL BACKGROUND

On November 6, 2007, Katz went to a Lawrence bar at 9:45 p.m. During the 4 hours he was at the bar, Katz drank 5 pints of beer. Shortly before closing time, at 1:45 a.m. to 1:50 a.m., Katz left the drinking establishment. As Katz was backing his vehicle out of a parking space, he "felt a bump." Katz testified that he "turned around, and I looked, and there was . . . just like a barrier pole and I figured that's what I hit." In fact, Katz had struck another car. After the accident, Katz did not stop but drove from the scene.

In the company of two friends, Katz drove to his Lawrence apartment. According to Katz, while driving home he was not drunk: "I tried to watch what I consumed in terms of alcohol . . . tried to keep it under what I thought was . . . the legal limit of being able to drive home because I was responsible for other people." In support of his testimony, Katz presented an expert witness, Mi-

chael Clarke, a certified operator and maintenance technician for the Intoxilyzer 5000. Clarke testified it was possible that a driver with Katz' weight who had consumed the amount of alcohol he claimed could have had an alcohol concentration below .08 at the time he drove his vehicle.

According to Katz, once at home, he began a drinking game with friends. Katz testified that over "[r]oughly thirty, forty minutes" he had, "[o]n top of four or five, maybe six shots . . . three, four beers also. Somewhere in that range." Katz testified that he became intoxicated and "went to bed I believe. It gets a little hazy at this point."

In the meantime, a witness to the accident reported it to the police. Officer Bruce Elliott arrived at the bar at about 2 a.m. to investigate. Finding no witnesses, the officer left the establishment. Shortly thereafter, at 2:26 a.m., Officer Elliott was dispatched to the bar again where he made contact with witnesses who provided him with the license plate number of Katz' vehicle.

Officer Elliott arrived at Katz' apartment shortly after 3 a.m., about 1 hour and 15 minutes after the accident. The officer located Katz' vehicle, noticed some damage, and then knocked on the apartment door. Katz had to be shaken "awake pretty forcefully" by his roommate. Officer Elliott testified that Katz had slurred speech, bloodshot eyes, and a moderate odor of alcohol on his breath. He also observed "alcohol containers" about the apartment.

Officer Elliott informed Katz that his vehicle had "been involved in an accident behind [the bar]." Katz denied the allegation. He told Officer Elliott he had not driven his vehicle and that an unnamed friend had been driving it at that time. In fact, Katz claimed he had last seen his vehicle in front of a different Lawrence bar. When Officer Elliott confronted Katz with information provided by witnesses who saw the accident, Katz finally admitted he had "backed into another vehicle then drove away."

Officer Elliott asked Katz if he had consumed alcohol since he returned to his apartment from the bar. Katz responded, "No." The officer also asked Katz whether he had consumed any alcohol since the accident. Katz replied, "No." Officer Elliott asked Katz these questions to give him "that benefit of the doubt to say, yeah,

I downed a fifth, but [Katz] said that he had nothing to drink." Katz had no recollection of the early morning conversation with Officer Elliott.

Because it was within "a two hour limit" since Katz had driven his vehicle, Officer Elliott administered a field sobriety test. According to the officer, the test results "gave me clues indicating [Katz] had alcohol in his system." As a result, Katz was arrested for driving under the influence of alcohol. At 4:26 a.m.—about 2 hours and 45 minutes after the accident—Katz submitted to an Intoxilyzer 5000 breath test. This test revealed that Katz had a .203 breath alcohol concentration. In compliance with K.S.A. 2009 Supp. 8-1002(a)(2), Officer Elliott completed and served Katz with an officer's certification and notice of suspension of his driving privileges.

Katz requested an administrative license suspension hearing. See K.S.A. 2009 Supp. 8-1020. At the conclusion of the evidentiary hearing, the administrative hearing officer's notes show Katz argued "intervening intoxication" and raised "a constitutional issue." The administrative hearing officer, however, affirmed the suspension order.

Katz petitioned for review pursuant to the Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA). K.S.A. 77-601 et seq. He alleged KDR "improperly suspended [his] driver's license because [he] did not operate or attempt to operate a vehicle under the influence." Katz also claimed his "intoxication developed only after he had returned home—not while he was operating or attempting to operate a vehicle."

A trial on Katz' petition was held in Douglas County District Court where the facts discussed above were fully developed. The trial focused on Officer Elliott's certification of eight statements made on the DC-27 form that the officer completed and served on Katz. These statements were required to be certified before KDR could suspend Katz' driving privileges for driving a motor vehicle and having a breath test result which indicated .08 or greater in alcohol concentration. K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H).

The eight statements were listed in numerical order on the DC-27 form. According to the instructions on the form, beside each statement "at least one officer must initial on the line to the left of each of the statements intended to be certified." Officer Elliott had placed his initials beside each of the eight statements.

Referring to the eight statements, Katz' counsel argued: "[W]hat the [KDR] wants the Court to do . . . is to check every box. If you can check every box, then you don't need to think about these all together." Katz' counsel candidly conceded that under the facts that were developed at trial, "you *can* check all those boxes." (Emphasis added.)

Nevertheless, the crux of Katz' argument was that KDR was required to prove a temporal relationship between two individual statements certified by Officer Elliott. The first statement, set forth in K.S.A. 2009 Supp. 8-1020(h)(2)(A), and found on line 1 of the DC-27 form, was that Officer Elliott certified he had "reasonable grounds" to believe that Katz had been operating a vehicle while under the influence of alcohol. The second statement, set forth in K.S.A. 2009 Supp. 8-1020(h)(2)(G), and found on line 4 of the DC-27 form, was that after the breath test given to Katz upon his arrest, the result showed Katz had an alcohol concentration of .08 or greater. Katz argued "the only common sense approach is that there has to be some sort of temporal scope that puts all of this together, and . . . we [have] proven . . . that [the] breath test doesn't have anything to do with the amount of alcohol Mr. Katz consumed prior to driving."

KDR's counsel agreed, "we do check the boxes here," which meant that Officer Elliott had proven the factual basis for his certification of the eight statements necessary for suspension of driving privileges. The district court, however, remarked that the "question is . . . whether [Katz] failed the breath test." KDR's counsel agreed. But the district court challenged KDR's counsel to explain how the Intoxilyzer 5000 test "can be reliable if there was alcohol consumed [after Katz drove the vehicle]." In the district court's view, the test was only reliable "as to what [Katz'] breath alcohol was as of 4:30 in the morning . . . and that's all." KDR's counsel agreed with the district court but pointed out "the

statute . . . doesn't say that the test must be a reliable measure of the [alcohol concentration] *at the time [Katz] drove"* his vehicle. (Emphasis added.)

After extensive argument, the district judge concluded:

"I just think . . . under the facts, the question is whether or not [Katz] was driving at the time under the influence of alcohol.

. . . .

"Now, did the officer have reasonable grounds to give him the test? Yeah. Given what he told him, he did have reasonable grounds. . . . I think that check mark can be made. The problem is I don't see how the test can be accurate, knowing what we know . . . and I don't think the evidence, other than that, is sufficient to show that he was under the influence of alcohol . . . at the time he was driving."

The district court filed a journal entry stating Katz "did not operate or attempt to operate a vehicle while under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle." In particular, the district court found the "test results . . . provide no reliable indication of the amount of alcohol [Katz] consumed prior to operating a vehicle or the alcohol concentration in [his] breath at the time he was operating a vehicle." Instead, the district court found the test results were due to Katz' consumption of "copious amounts of alcohol *after* driving." (Emphasis added.)

Based on these factual findings, the district court held KDR's driver's license suspension order was unsupported by substantial evidence, unreasonable, arbitrary, and capricious, involved an erroneous interpretation or application of law, and violated due process. The suspension order was reversed, and Katz' driving privileges were reinstated.

KDR appeals.

## DISCUSSION

This case concerns the interpretation and application of certain provisions of the Kansas Implied Consent Law, K.S.A. 2009 Supp. 8-1001 *et seq.* On appeal, KDR contends the district court went beyond the plain language of K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H) by requiring the administrative agency to prove that the .203 Intoxlyzer 5000 test result reflected the alcohol concentration in

Katz' breath at the time he was operating his motor vehicle about 2 hours and 45 minutes earlier. KDR argues:

"Nothing in the statute requires an officer to establish that the driver was in fact operating a vehicle with a blood alcohol content (BAC) of .08 or greater. K.S.A. 8-1020(h)(2)(G) requires only that a subsequent 'test result determined that the person had an alcohol concentration of .08 or greater in such person's breath.' Had the legislature intended for that determination to be made as of the time of operation, that language could have been included in the statute. Similarly, had the legislature intended to allow post-driving alcohol consumption to have an effect on an evidentiary breath test, it could have included language to that effect as well. Neither of those issues is included in the language of the statute."

In response, Katz counters "[i]t is wholly arbitrary and unreasonable to suspend the license of a person who is not drunk, simply because he decided to get drunk innocently and legally after driving."

At the outset, some legal standards are relevant. At the administrative hearing, Katz had "the burden of proof by a preponderance of the evidence to show that the facts set out in the officer's certification [were] false or insufficient." K.S.A. 2009 Supp. 8-1020(k). Upon review of KDR's administrative action by the district court under the provisions of the KJRA, Katz also had the burden "to show that the decision of the agency should be set aside." K.S.A. 2009 Supp. 8-1020(q).

On appeal, our review is well established: "Under the . . . (KJRA), K.S.A. 77-601 *et seq.*, an appellate court exercises the same limited review of the agency's action as does the district court, *i.e.,* as though the appeal had been made directly to the appellate court." *Kansas Dept. of Revenue v. Powell,* 290 Kan. 564, Syl. ¶ 1, 232 P.3d 856 (2010). In the present case, the facts are essentially undisputed. The issues raised by the parties are matters of statutory and constitutional interpretation which "raise pure questions of law subject to unlimited appellate review." *Martin v. Kansas Dept. of Revenue,* 285 Kan. 625, Syl. ¶ 1, 176 P.3d 938 (2008).

The statute in question, K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H), controls the "scope" of an administrative license suspension hearing "[i]f the officer certifies that the person failed a breath test." K.S.A. 2009 Supp. 8-1020(h)(2). Our Supreme Court has deter-

mined that "K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H) is clear and unambiguous; and its list of issues that may be decided in an administrative driver's license suspension hearing *is exclusive*." (Emphasis added.) 285 Kan. 625, Syl. ¶ 2. K.S.A. 2009 Supp. 8-1020(p) also provides: "If the court finds that the grounds for action by the agency have been met, the court shall affirm the agency action." In the present case, the "grounds for action by the agency" were the eight certified statements provided in K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H) and listed on the DC-27 form.

In short, KDR's administrative hearing was statutorily limited to whether the eight statements certified by Officer Elliott were proven. The district court's review of KDR's action was similarly limited to the following eight statements:

"(A) A law enforcement officer had reasonable grounds to believe the person was operating a vehicle while under the influence of alcohol . . . ;

"(B) the person was in custody or arrested for an alcohol or drug related offense or was involved in a vehicle accident or collision resulting in property damage . . . ;

"(C) a law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001, and amendments thereto;

"(D) the testing equipment used was certified by the Kansas department of health and environment [KDHE];

"(E) the person who operated the testing equipment was certified by the [KDHE];

"(F) the testing procedures used substantially complied with the procedures set out by the [KDHE];

"(G) the test result determined that the person had an alcohol concentration of .08 or greater in such person's breath; and

"(H) the person was operating or attempting to operate a vehicle." K.S.A. 2009 Supp. 8-1020(h)(2).

Importantly, in the district court, Katz admitted that KDR had proven each of the eight statements certified by Officer Elliott. Based on this evidence, Katz colloquially conceded in the district court that KDR could "check the boxes." For its part, KDR agreed that it had proven the eight statements certified by Officer Elliott and that this proof was sufficient to affirm Katz' suspension.

In keeping with the limited review authorized by the KJRA, the district court overturned KDR's suspension order based on four

material issues. See K.S.A. 77-621. We will review each issue individually.

*The agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole.*

The district court based its ruling, in part, on K.S.A. 77-621(c)(7). This provision allows the district court to grant relief if it determines

"the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act." K.S.A. 77-621(c)(7).

As found by the district court:

"[KDR's] action was based on an implied determination of fact that is not supported by substantial evidence when viewed in the light of the record as a whole, because [KDR's] action is based on the implied determination that there is some *meaningful relationship* between the alcohol [Katz] consumed prior to driving and the results of [his] breath test. In fact, there is no *meaningful relationship* because [Katz] consumed copious amounts of alcohol after driving, and in doing so [he] had no intent to evade testing or interfere with the test results." (Emphasis added.)

The record does not support the district court's finding that KDR made this implied determination of fact. Our review of the record shows that KDR never based its suspension of Katz' driving privileges on the premise that the Intoxilyzer 5000 test result accurately reflected Katz' breath alcohol concentration at the time he was operating his vehicle. In fact, KDR explicitly acknowledged at trial that the Intoxilyzer 5000 test result reliably indicated Katz' breath alcohol concentration only at the time he took the test, about 2 hours and 45 minutes later, not at the time he was actually operating his vehicle. KDR's argument was a purely legal one—the individual certification provisions of K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H) do not require proof of a "meaningful relationship" between the driver operating a vehicle and the subsequent breath test result.

KDR's argument has merit. Our review of the plain language of K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H) reveals no requirement that the agency base its enforcement action on proof that the licensee had a particular breath alcohol concentration at the time the vehicle was driven. KDR based its suspension of Katz' driving privileges on proof that the eight individual requirements of the statute were met by Officer Elliott. That proof was conceded by Katz. Nothing more and nothing less was statutorily required.

Moreover, as mentioned earlier, our Supreme Court has found the eight individual issues for determination in an administrative license suspension hearing are "exclusive." 285 Kan. 625, Syl. ¶ 2. Nowhere in K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H) is found the requirement that KDR must also prove a "meaningful relationship" between the time of driving and the result of the alcohol breath test. Quite simply, proof of Katz' alcohol concentration at the time he was operating his vehicle was beyond the scope of K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H).

*The agency action is otherwise unreasonable, arbitrary, or capricious.*

The district court also invalidated KDR's suspension of Katz' driving privileges on the basis that "the agency action is otherwise unreasonable, arbitrary or capricious." K.S.A. 77-621(c)(8). Applying similar reasoning used earlier, the district court concluded:

"[KDR's] action was unreasonable, arbitrary, and capricious because it failed to consider the relevant factors of K.S.A. 8-1020(h)(2) *in pari materia*, to determine whether the finding that [Katz] 'had an alcohol concentration of .08 or greater in his breath,' K.S.A. 8-1020(h)(2)(G), had any *meaningful connection* to the finding that he 'was operating or attempting to operate a vehicle,' K.S.A. 8-1020(h)(2)(H)." (Emphasis added.)

First, we will review whether KDR's action was unreasonable:

"An administrative action is unreasonable when it is so arbitrary that it can be said it was taken without regard to the benefit or harm involved to the community at large, including all interested parties, and was so wide of the mark that its unreasonableness lies outside the realm of fair debate. Whether an action is reasonable or not is a question of law, to be determined upon the basis of the facts which were presented to the [agency]." *Board of Johnson County Comm'rs v. City of Olathe*, 263 Kan. 667, Syl. ¶ 3, 952 P.2d 1302 (1998).

Of course, this definition presumes an agency has some sort of decision or choice before it. In *Board of Johnson County Comm'rs*, for example, it was a zoning decision. *In re Tax Application of Emporia Motors, Inc.*, 30 Kan. App. 2d 621, 624, 44 P.3d 1280, *rev. denied* 274 Kan. 1112 (2002), it was the conduct of a hearing.

In the present case, test failure is defined by statute: " 'Test failure' or 'fails a test' refers to a person's having results of a test . . . which show an alcohol concentration of .08 or greater in the person's blood or breath." K.S.A. 2009 Supp. 8-1013(h). If a person fails the test with a .15 or greater alcohol concentration, the legislature has directed that KDR *"shall"* suspend driving privileges as set out in K.S.A. 2009 Supp. 8-1014(b)(2)(A)-(D). (Emphasis added.) Moreover, upon receipt of an officer's certification meeting the statutory requirements, the legislature has mandated that KDR *"shall* proceed to suspend the person's driving privileges." (Emphasis added.) K.S.A. 2009 Supp. 8-1002(f).

Under this statutory scheme, given the uncontroverted fact that Katz failed the Intoxilyzer test, KDR's action was less a matter of discretion and more a matter of simple compliance with legislative mandates regarding alcohol breath test failures. Because even Katz concedes that KDR could "check" every statutory "box," we cannot conclude its suspension action was unreasonable. To the contrary, KDR conscientiously followed the statutes. Assuming the statutes are unreasonable, *i.e.* not written with regard to the benefit or harm to the community at large, that unreasonableness is attributable to the legislature, and not within the purview of KDR. See *State, ex rel., Londerholm v. Columbia Pictures Corp.*, 197 Kan. 448, 455, 417 P.2d 255 (1966) ("[t]he authority to declare the public policy of this state is vested in the legislature, not an administrative board"), as quoted in *Powell*, 290 Kan. at 570.

KDR's action was also not arbitrary or capricious. "The arbitrary or capricious test relates to whether a particular action should have been taken or is justified, such as the reasonableness of an agency's exercise of discretion in reaching a determination or whether the agency's action is without foundation in fact." *Sokol v. Kansas Dept. of SRS*, 267 Kan. 740, Syl. ¶ 2, 981 P.2d 1172 (1999). Given the facts developed at the hearing, the proof of compliance with the

eight statements required for suspension listed in K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H), and the statutory provisions mandating suspension upon a finding of a test failure, we do not find KDR's action arbitrary or capricious. Test failure is defined by statute. Katz clearly failed by that standard, and as a result, KDR reasonably complied with the legislative mandate to suspend Katz' driving privileges.

Although the district court categorized KDR's failure to interpret the individual factors of K.S.A. 2009 Supp. 8-1020(h)(2) in pari materia as an unreasonable, arbitrary or capricious action, the court's finding is more appropriately analyzed on the basis that KDR "erroneously interpreted or applied the law." K.S.A. 77-621(c)(4). In order to fairly and thoroughly address the district court's concerns based on its findings, we also address that basis.

*The agency has erroneously interpreted or applied the law.*

K.S.A. 77-621(c)(4) allows the administrative hearing officer and the district court to consider whether the administrative action was in error because "the agency has erroneously interpreted or applied the law." Kansas law provides that "[a]n appellate court's review of an agency's statutory interpretation is unlimited, with no deference being given to the agency's interpretation." *Powell*, 290 Kan. 564, Syl. ¶ 3.

We believe the district court erred when it implicitly found that KDR erroneously interpreted or applied the law because the agency failed to employ the rule of statutory construction, in pari materia, in its interpretation of the eight statements contained in K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H).

It is well-settled law that courts should consider and construe together all parts of a statute in pari materia only when statutory construction is required. See *Cochran v. Kansas Dept. of Agriculture*, 291 Kan. 898, 903-04, 249 P.3d 434 (2011). Importantly, our Supreme Court found in *Martin,* that the provisions of K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H) are "clear and unambiguous." *Martin*, 285 Kan. 625, Syl. ¶ 2. Given this precedent, it would have been improper for KDR to employ the rule in pari materia because only ambiguous statutes are subject to the canons of statutory construc-

tion. See *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271-72, 202 P.3d 7 (2009). Moreover, because our Supreme Court found the statutory language was clear and unambiguous, it was also error for the district court to "read the statute to add something not readily found in it." *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, Syl. ¶ 1, 214 P.3d 676 (2009).

Finally, we conclude a plain reading of K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H) provides the "meaningful connection" the district court found wanting in the present case. That temporal relationship between operating a motor vehicle and being under the influence of alcohol is established when the evidence shows the officer had "reasonable grounds to believe the person was operating a vehicle while under the influence of alcohol." K.S.A. 2009 Supp. 8-1020(h)(2)(A). If reasonable grounds exist to support an officer's belief that there is a relationship between operating a motor vehicle and being under the influence of alcohol, the officer may arrest the individual and have that person submit to an alcohol breath test which, if failed, results in suspension.

That "meaningful connection" was clearly shown in the present case. Officer Elliott initially contacted Katz about 1 hour and 15 minutes after the accident. At the time Officer Elliott encountered Katz at his apartment, he knew Katz had been drinking alcoholic beverages at the bar immediately prior to the accident. The officer also knew that Katz promptly fled the scene, and by 3 a.m. Katz was soundly asleep. Upon being awakened, Officer Elliott noticed that Katz had slurred speech, bloodshot eyes, and a moderate odor of alcohol on his breath. Katz initially lied about driving his vehicle and being involved in the accident. Katz also specifically *denied* consuming any alcoholic beverages after the accident or upon his return to the apartment. A field sobriety test, however, revealed clues that Katz had consumed alcohol.

Given this factual scenario, it is not surprising that Katz' counsel admitted that Officer Elliott had reasonable grounds to believe that Katz had operated his motor vehicle while under the influence of alcohol:

"MR. CAMPBELL: . . . subsection (A), whether law enforcement had reasonable grounds to believe the person was operating a vehicle while under the influ-

ence of alcohol or drugs. Well, sure there was some reasonable grounds that he had been driving, that he had something to drink at [the bar], and he certainly got in a subsequent accident [at the bar.]

"THE COURT: Yeah, no question there.

"MR. CAMPBELL: So you can certainly check that box, right.

"THE COURT: Yeah."

We do not believe that courts may go beyond the plain and unambiguous statutory provisions and, by improperly employing a rule of statutory construction, require KDR to prove that the driver, at the time of operating a vehicle, in fact, was actually under the influence of alcohol. Additionally, we will not read into the statute a requirement that the subsequent breath test must reflect the alcohol concentration of the driver at the time of driving.

*Furthmyer v. Kansas Dept. of Revenue*, 19 Kan. App. 2d 591, 873 P.2d 1365 (1994), *rev'd* 256 Kan. 825, 888 P.2d 832 (1995), provides valuable precedent in this regard. In *Furthmyer*, a law enforcement officer noticed a car stopped near a stop sign with the motor running. Furthmyer was behind the wheel either asleep or passed out with the transmission in gear and his foot on the brake. Furthmyer was arrested for driving under the influence alcohol, and his subsequent failure to provide a sufficient breath sample was interpreted as a test refusal.

The Kansas statute then controlling the scope of administrative license suspension hearings for test refusals permitted consideration of whether the " 'law enforcement officer had reasonable grounds to believe the person was operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs.' " 19 Kan. App. 2d at 593-94 (quoting K.S.A. 1993 Supp. 8-1002[h][1][A]). The statute, however, did not require proof that the person, in fact, was actually operating or attempting to operate a motor vehicle. See 19 Kan. App. 2d at 593-94. KDR administratively suspended Furthmyer's driving privileges, and the district court affirmed, without determining whether he actually operated or attempted to operate the motor vehicle. 19 Kan. App. 2d at 591, 593.

On appeal, Furthmyer contended his license should not have been suspended without such a determination. A panel of our Court of Appeals agreed:

"Although a law enforcement officer may have reasonable grounds to believe the person who refuses to submit to testing was operating or attempting to operate a motor vehicle while under the influence of alcohol . . . we hold that the refusal cannot be made the basis of suspending the person's driving privileges unless it is also determined that the person was actually operating or attempting to operate the vehicle." 19 Kan. App. 2d at 595.

Our Supreme Court reversed the Court of Appeals' judgment:

"From the language of the statutes involved, we conclude the legislature intended that when a blood alcohol test is refused, the KDR need only prove a law enforcement officer had reasonable grounds to believe the person was operating or attempting to operate a motor vehicle while under the influence of alcohol or drugs and *not that the person had actually operated or attempted to operate the motor vehicle.*" (Emphasis added.) *Furthmyer v. Kansas Dept. of Revenue*, 256 Kan. 825, 836, 888 P.2d 832 (1995).

Although K.S.A. 2009 Supp. 8-1020(h)(2)(H) now includes the requirement that "the person was operating or attempting to operate a vehicle" within the scope of administrative license suspension hearings for test failures, that statute does not include a further determination that the person, in fact, was actually operating or attempting to operate a vehicle while under the influence of alcohol. Only the law enforcement officer's "reasonable grounds to believe the person was operating a vehicle while under the influence of alcohol" must be proven. K.S.A. 2009 Supp. 8-1020(h)(2)(A).

In *Furthmyer*, our Supreme Court held the district court "applied the correct standard" by limiting itself to the scope of the administrative license suspension hearing and refusing to consider whether the person actually was operating or attempting to operate a motor vehicle. 256 Kan. at 836. Here, in contrast, the district court erred by going beyond the scope of the statute and requiring KDR to prove not only that Katz was actually operating his vehicle while under the influence of alcohol but that the .203 Intoxilyzer 5000 test result reflected the alcohol concentration present in Katz' breath at the time he was driving.

Another case, *Podrebarac v. Kansas Dept. of Revenue*, 15 Kan. App. 2d 383, 807 P.2d 1327 (1991), also illustrates the impropriety of courts reading provisions into the Kansas Implied Consent Law.

In *Podrebarac*, the district court reversed KDR's suspension of driving privileges because the breath test was conducted more than 2 hours after Podrebarac had operated his vehicle. KDR appealed the adverse judgment, and Podrebarac defended the reversal of his suspension by arguing that, without a relatively brief period of time between operating the vehicle and breath alcohol testing, KDR could suspend a license "on a test result when the test did not occur until long after the person last drove a vehicle." 15 Kan. App. 2d at 387. This was also a concern expressed by Katz and the district court in the present case.

Our Court of Appeals reversed the district court and remanded with directions to affirm KDR's suspension of Podrebarac's driving privileges. Our court found the district court had improperly "read the two-hour limitation in the criminal DUI statute into the definition of test failure under the implied consent statute." 15 Kan. App. 2d at 385. Moreover, our court explained that any concern about the delay which occurs between the time of driving and the taking of the breath test was "addressed by the language of the implied consent statute, which requires a law enforcement officer to have reasonable grounds to believe the person was operating or attempting to operate while under the influence of alcohol," and also by the requirement that reasonable suspicion "exist *before* an officer can request a person to submit to a test." 15 Kan. App. 2d at 387.

Any delay between driving and the breath test was merely one factor in the officer's determination: "The longer the delay between the operation of the vehicle and the administration of the test, the more unreasonable the officer's grounds become for believing the person drove while under the influence of alcohol." 15 Kan. App. 2d at 387. Finally, our court observed: "The use of the term 'reasonable grounds' to believe a person operated a vehicle while intoxicated indicates the legislature's intent to allow administrative suspensions for driving while intoxicated on less strict standards of proof than a criminal conviction." 15 Kan. App. 2d at 386.

There may be instances where a driver's consumption of alcohol after operating a vehicle but prior to taking a breath test may properly result in KDR's decision not to suspend driving privileges. But

that post-driving consumption, under a plain reading of K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H), should be evaluated by KDR's administrative hearing officer and the courts in the context of the officer's reasonable grounds to believe whether the driver had operated the vehicle while under the influence of alcohol. K.S.A. 2009 Supp. 8-1020(h)(2)(A). The more alcohol a person drinks after driving but before testing, the more unreasonable may be the officer's grounds for belief that the person drove while under the influence of alcohol. But to consider—apart from the officer's reasonable belief—whether the person actually drove while under the influence of alcohol or at a particular alcohol concentration level "disregards the plain language of the provisions of the implied consent statute, which imposes no such limitation." 15 Kan. App. 2d at 385.

In the present case, at the time Officer Elliott developed reasonable grounds to believe that Katz had operated his motor vehicle while under the influence of alcohol, the officer had no reason to believe any post-driving alcohol consumption had occurred. To the contrary, in addition to the brief time period (1 hour and 15 minutes) which occurred between the accident and Officer Elliott's personal observations of Katz' intoxicated condition, Katz' repeated statements to the officer denying post-driving alcohol use provided substantial competent evidence to support the officer's reasonable belief that Katz had operated his vehicle while under the influence of alcohol.

The implied consent statutory scheme "indicates the legislature's intent to allow administrative suspensions . . . on less strict standards of proof than a criminal conviction." *Podrebarac*, 15 Kan. App. 2d at 386. Moreover, the legislature has informed us that the implied consent law "is remedial law and shall be liberally construed to promote public health, safety and welfare." K.S.A. 2009 Supp. 8-1001(q); see also *Huelsman v. Kansas Dept. of Revenue*, 267 Kan. 456, 462, 980 P.2d 1022 (1999) (distinguishing driver's license suspensions from DUI actions).

Katz conceded that Officer Elliott had reasonable grounds for his belief, and together with the subsequent test failure and other

K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H) evidence, "the grounds for action by the agency" were "met." K.S.A. 2009 Supp. 8-1020(p).

*The agency action is unconstitutional as applied.*

Finally, the district court held KDR's suspension of Katz' driving privileges was unconstitutional as applied under K.S.A. 77-621(c)(1). That provision allows the district court to grant relief if it determines "[t]he agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied." K.S.A. 77-621(c)(1). According to the district court:

"[KDR's] action violated due process by relying on test results which do not constitute a 'test failure,' for the purposes of the implied consent law, K.S.A. 8-1001 *et seq.*, because they provide no reliable indication of the amount of alcohol [Katz] consumed prior to operating a vehicle or the alcohol concentration in [his] breath at the time he was operating a vehicle. [KDR's] application of the law in this manner would permit the suspension and restriction of driving privileges based on test results obtained long after the reasonable belief of intoxication arises and at a point in time after which any amount of alcohol in a person's system at the time of driving has been completely metabolized. In fact, [Katz] consumed copious amounts of alcohol after driving, and in doing so [he] had no intent to evade testing or interfere with the test results."

Constitutional issues may be raised at the agency level, but they are decided by the courts. *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, Syl. ¶ 5, 176 P.3d 938 (2008). As a result, there is no conflict between review of a constitutional issue under the KJRA and the more limited scope of an administrative license suspension hearing under K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H). See 285 Kan. at 631-33. Judging from the administrative hearing officer's notes, Katz took the "wise course" and raised his constitutional issue at the agency level to insure its preservation for appeal. 285 Kan. at 634.

The district court did not specify whether KDR had violated Katz' substantive or procedural due process rights. After briefing and oral arguments, however, the parties agree the issue raised is substantive due process. We review this question de novo. See *Hemphill v. Kansas Dept. of Revenue*, 270 Kan. 83, 89, 11 P.3d 1165 (2000).

Substantive due process "limits what the government may do" in its executive and legislative capacities. *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998); see *Dias v. City and County of Denver*, 567 F.3d 1169, 1182 (10th Cir. 2009). The United States Supreme Court has identified two "strands" of substantive due process jurisprudence. *Seegmiller v. Laverkin City*, 528 F.3d 762 (10th Cir. 2008). As summarized by the Tenth Circuit Court of Appeals, "[o]ne strand protects an individual's fundamental liberty interest, while the other protects against the exercise of governmental power that shocks the conscience." 528 F.3d at 767.

More specifically, the first strand forbids the government to infringe on fundamental liberty interests, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. *Washington v. Glucksberg*, 521 U.S. 702, 721, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997). The second strand, relating to conduct that shocks the judicial conscience, focuses on preventing government officials from abusing their power, or employing it as an instrument of oppression. *County of Sacramento*, 523 U.S. at 846. Of course, each analysis requires certain findings of fact and conclusions of law.

In the present case, the record does not contain essential findings of fact or conclusions of law relating to either strand of the substantive due process analysis. Moreover, Katz did not argue below—and he also fails to argue on appeal—which strand of substantive due process analysis should be applied to KDR's action in this case. Finally, the district court did not engage in any particular substantive due process analysis. As a consequence, we are left to speculate regarding this constitutional issue which is not appropriate in matters of appellate review.

Based on our independent review of the record, we discern no apparent violation of Katz' substantive due process rights. Katz has not identified a fundamental liberty interest at issue. Moreover, as discussed earlier, KDR's action was not unreasonable, arbitrary, or capricious—let alone an abuse of administrative power which shocks the conscience of this court. To the contrary, KDR dutifully applied K.S.A. 2009 Supp. 8-1020(h)(2)(A)-(H) to the evidence and

suspended Katz' driving privileges as required under K.S.A. 2009 Supp. 8-1014(b)(2)(A)-(D).

The district court's judgment is reversed, and the case is remanded with directions to affirm KDR's driver's license suspension order.