NOT DESIGNATED FOR PUBLICATION

No. 112,039

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SHARLA LEVERENZ,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; FAITH MAUGHAN, judge. Opinion filed October 2, 2015.
Reversed.

*J. Brian Cox*, senior litigation attorney, Legal Services Bureau, of Kansas Department of
Revenue, for appellant.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, and *Robert Weichman, Jr.*,
of Wichita, for appellee.

Before MCANANY, P.J., GARDNER, J., and WALKER, S.J.

*Per Curiam*: The Kansas Department of Revenue (KDR) appeals from the district
court's order which overturned the administrative suspension of Sharla Leverenz' driving
privileges. Because we find the district court misapplied the law to the facts in this case,
we reverse and direct that Leverenz' driver's license suspension be reinstated.

1

FACTS

Because a complete understanding of this case requires a careful examination of the facts, they will be set out in some detail.

On August 18, 2011, Sedgwick County Deputy Sheriff Daniel Ribble was on patrol when he observed the driver of a car exhibit "confused driving." Deputy Ribble observed the driver make various driving errors such as stopping when there was no stop sign and slowing down as if to make a turn and then accelerating again. As an Advanced Roadside Impaired Driving Enforcement certified officer, Deputy Ribble suspected, based on the time of night and the confused driving, that the driver might be impaired. Deputy Ribble followed the car for a short time and initiated a traffic stop when the driver failed to signal when making a lane change and when turning right.

Upon making contact with the driver, Sharla Leverenz, Deputy Ribble noticed there was an odor of alcohol coming from the car and Leverenz' eyes were bloodshot and watery. Deputy Ribble did not notice Leverenz was slurring her speech or having difficulty communicating, but when he asked if she had been drinking, she told Ribble she had consumed two 16-ounce beers. Deputy Ribble also noticed Leverenz' pupils were dilated, which is not a symptom of alcohol consumption. Based on this evidence, Deputy Ribble suspected Leverenz might be under the influence of drugs.

After Deputy Ribble asked Leverenz to get out of the car, she stumbled and bumped into it. Deputy Ribble then asked Leverenz to perform various field sobriety tests. After performing the tests, Deputy Ribble determined Leverenz was impaired and he asked her to take a preliminary breath test. Leverenz admitted she thought she would be over the legal limit of .08, but the breath test result was .063. Deputy Ribble suspected there were additional factors causing Leverenz' impairment and asked her if she had taken any drugs. Leverenz responded she had taken her normal dosage of Wellbutrin, an

antidepressant, 1 hour before the traffic stop. Leverenz indicated she knew there was a warning about mixing Wellbutrin and alcohol.

Believing Leverenz was more impaired than the breath test indicated, Deputy Ribble arrested Leverenz and transported her to the jail. After they arrived at the jail, Leverenz took a breath test which resulted in a .059. Deputy Ribble felt there were drugs contributing to Leverenz' impairment but could not establish what level of impairment she had on the breath test alone. He requested a Drug Recognition Expert (DRE) come to the jail to evaluate Leverenz. A DRE is able to evaluate whether an individual is impaired by drugs.

While waiting for the DRE, Deputy Ribble asked Leverenz some additional questions. She admitted to taking three different prescription drugs including the Wellbutrin as well as Synthroid and T-3. After waiting more than 30 minutes, the DRE contacted Deputy Ribble and told him he was unable to make it to the jail to evaluate Leverenz. Based on his conversation with Leverenz about the prescription drugs she had taken, and the fact that her impairment seemed to be caused by something more than alcohol, Deputy Ribble asked Leverenz to take a blood test. Leverenz refused to take the blood test.

Leverenz was not charged with driving under the influence, but her driver's license was suspended because of her blood test refusal. Leverenz' license suspension was affirmed at an administrative hearing, and she filed a petition for review in the Sedgwick County District Court. The district court held an evidentiary hearing on the issue of Leverenz' license suspension on January 7, 2014, and February 3, 2014.

After hearing evidence from Deputy Ribble and Leverenz, the district court determined Deputy Ribble did have reasonable grounds to ask Leverenz to submit to a breath test, but he did not have grounds to request a blood test. The order suspending

Leverenz' driver's license was set aside, and KDR filed a motion to alter or amend the district court's order. The district court held a hearing and denied the motion on March 6, 2014. KDR timely appealed the district court's order.

ANALYSIS

*The officer's request for a blood test*

On appeal, KDR argues the district court misinterpreted the implied consent statute when it found Deputy Ribble needed additional reasonable grounds beyond those justifying a breath test in order to request a blood test from Leverenz.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Cady v. Schroll*, 298 Kan. 731, 734, 317 P.3d 90 (2014). The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained. *Nationwide Mutual Ins. Co. v. Briggs*, 298 Kan. 873, 875, 317 P.3d 770 (2014). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Schroll*, 298 Kan. at 738-39.

The statute at issue is K.S.A. 2011 Supp. 8-1001(a)-(b)(1) which states, in part:

"(a) Any person who operates or attempts to operate a vehicle within this state is deemed to have given consent, subject to the provisions of this act, *to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs.* The testing deemed consented to herein shall include all quantitative and qualitative tests for alcohol and drugs. A person who is dead or

4

unconscious shall be deemed not to have withdrawn the person's consent to such test or tests, which shall be administered in the manner provided by this section.

"(b) A law enforcement officer shall request a person to submit to *a test or tests* deemed consented to under subsection (a): (1) If the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both, or to believe that the person was driving a commercial motor vehicle, as defined in K.S.A. 8-2,128, and amendments thereto, while having alcohol or other drugs in such person's system, or was under the age of 21 years while having alcohol or other drugs in such person's system; and one of the following conditions exists: (A) The person has been arrested or otherwise taken into custody for any offense involving operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both, or for a violation of K.S.A. 8-1567a, and amendments thereto, or involving driving a commercial motor vehicle, as defined in K.S.A. 8-2,128, and amendments thereto, while having alcohol or other drugs in such person's system, in violation of a state statute or a city ordinance; or (B) the person has been involved in a vehicle accident or collision resulting in property damage or personal injury other than serious injury . . . ." (Emphasis added.)

Under K.S.A. 2011 Supp. 8-1014, if a person refuses a test, that person's license shall be suspended for 1 year and then restricted for a period of time depending on how many past refusals that person has on his or her record.

In making its decision to set aside Leverenz' license suspension, the district court found Deputy Ribble needed additional reasonable grounds to request a blood test because Leverenz had not exhibited unsafe driving and had successfully passed a breath test. The district court noted the entire exchange between Deputy Ribble and Leverenz lasted 2 hours. During those 2 hours, Leverenz informed Deputy Ribble she had consumed two beers while taking her medications and then passed a roadside preliminary breath test and a breath test at the police station. The district court found that although there were enough reasonable grounds to request the breath test, there were not reasonable grounds to request the additional blood test even though Deputy Ribble

5

testified he was still suspicious of Leverenz' level of impairment despite her breath test results. The court noted the statute allows an officer to ask for more than one test but decided, "at some point in time we need to draw the line." When asked to clarify its decision, the district court judge responded:

> "What I'm saying, Mr. Cox [KDR's counsel], and I wish—I have it in my mind and I wish—I hope that I can explain it. If the officer—the officer chose his test as a breath test. He had the preliminary breath test. He knew all of the information that he was basing his probable cause to ask for a test and he chose that breath test.
>
> "If he had chosen a blood test—do I think you have to have more probable cause to ask for a blood than a breath? Absolutely not. But once you ask for that breath test it's my belief, not based on law or statute because I couldn't find anything to support—I wanted black and white answers and I couldn't find them, so I guess I'm making my own is what I'm saying.
>
> "But, for this Court, in order to have a completed breath test, not get the results that you believe are sufficient and want another test, you have to have some reason to request that additional test besides the fact that this one wasn't high enough."

On appeal, KDR contends the district court's conclusion is completely inconsistent with the plain language of the implied consent statute. KDR argues K.S.A. 2011 Supp. 8-1001(a) gives law enforcement the authority to request "one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs," if at the time of the request the officer has "reasonable grounds to believe the person was operating . . . a vehicle while under the influence of alcohol or drugs, or both." K.S.A. 2011 Supp. 8-1001(a)-(b)(1).

KDR complains the district court erred when it ruled Deputy Ribble needed additional reasonable grounds to request a blood test from Leverenz. It asserts that the plain language of the statute does not support the district court's ruling because, so long as the officer has the requisite reasonable grounds to believe the driver was under the influence of drugs or alcohol or both, the statute allows a law enforcement officer to

6

request "one or more tests of the person's blood, breath, urine or other bodily substance" without limitation as to the number. KDR argues there is nothing in the statute that would require additional reasonable grounds to request a second test.

KDR points to *Heitman v. State*, No. 108,216, 2013 WL 3455800 (Kan. App. 2013) (unpublished opinion), as authority to support its argument. In *Heitman*, a driver was arrested for driving under the influence (DUI). The arresting officer administered a breath test using an Intoxilyzer 8000, and the driver twice failed to provide a sufficient breath sample. The officer determined the driver was intentionally blocking the air flow to the Intoxilyzer, thus preventing the collection of a breath sample. The officer informed the driver that his failure to provide an adequate sample would be considered a refusal. The officer then asked the driver to take a blood test, and the driver complied. The driver's license was suspended for the breath test refusal, and his challenge ultimately reached our court. On appeal, the driver argued he should not be suspended for refusing the breath test because he submitted to the blood test, and the county attorney was able to obtain his blood-alcohol level for use in a subsequent prosecution. 2013 WL 3455800, at *2.

A panel of this court interpreted the implied consent statute and found the statutory language plainly permits a law enforcement officer to request multiple tests of a person arrested for DUI. In its discussion, the court noted the legislature broadly drafted the implied consent statute in order to insure compliance with an officer's testing request. 2013 WL 3455800, at *3-4. The court proposed a hypothetical situation almost identical to the facts of the present case and found that if a "significantly impaired driver smelling of alcohol" is taken into custody for a DUI and takes a breath test with results "well below .08 and what the driver's level of impairment would suggest," a law enforcement officer still has the authority to request a blood test to check for the presence of drugs under the implied consent statute. 2013 WL 3455800, at *3.

In response to KDR's assertion that *Heitman* is on point with the facts of the present case, Leverenz argues *Heitman* instead supports the district court's ruling that additional reasonable grounds are necessary to seek testing beyond a breath test. Leverenz differentiates the hypothetical situation proposed in *Heitman* because the officer there did have additional reasonable grounds to request a blood test because there was evidence the hypothetical driver was impaired by something other than just alcohol based on the results of the breath test.

Leverenz' argument misinterprets the holding in *Heitman*. The *Heitman* hypothetical she relies on is merely dicta. The *Heitman* court's holding—that the implied consent statute grants law enforcement the authority to request multiple blood, breath, or urine tests—does not support the district court's ruling in Leverenz' case. The district court's holding in this case was that law enforcement needed additional reasonable grounds to request additional tests. In *Heitman*, the court interpreted the statute to mean a law enforcement officer may request multiple tests of a person arrested for DUI so long as there are reasonable grounds for any test request. 2013 WL 3455800, at *3. The district court in Leverenz' case found there were reasonable grounds for the breath test. Following the logic of *Heitman*, this clearly means there existed reasonable grounds for Deputy Ribble to request a blood test.

To be clear, we embrace the finding by the panel in *Heitman* and hold that the public policy of the State, based upon the plain language of K.S.A. 2011 Supp. 8-1001(a) and (b), permits an officer, so long as the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs or both, to request the multiple tests authorized by the statute. Further, the officer may request such test or tests without specific correlation between the type of test requested and the precise nature of the suspected substance ingested by the driver. Likewise, the statute does not require an independent basis for each individual test requested, so long as reasonable grounds exist for the giving of any test under the statute.

Based upon this holding, we reject the false dichotomy employed by the district court which required separate and particularized justification for each test requested. We hold the district court erred in finding Deputy Ribble needed additional grounds to request a blood test. Therefore, the district court's decision to set aside Leverenz' license suspension must be reversed.

Leverenz' reasoning that Deputy Ribble had insufficient evidence of drug impairment is also incorrect. The deputy—like the officer in the *Heitman* hypothetical— had reasonable grounds to believe Leverenz was impaired by something other than alcohol. Deputy Ribble testified Leverenz exhibited signs of impairment—dilated eyes— that are inconsistent with alcohol impairment. Leverenz also admitted to Deputy Ribble she had taken her antidepressant 1 hour before the traffic stop and had taken a number of other prescription medications. She also failed her field sobriety tests. Deputy Ribble believed that her level of impairment was not consistent with the results of her breath test and, therefore, felt the need to have her evaluated by a DRE. There is no requirement in our law that a DRE evaluation be conducted as a prerequisite to a blood test request. Based upon the testimony before the district court, we find that Deputy Ribble had reasonable grounds to suspect drug impairment.

*The HGN test*

KDR also contends the district court erred when it refused to admit the results of Leverenz' horizontal gaze nystagmus (HGN) test on two occasions during the evidentiary hearing. First, the district court sustained Leverenz' objection that KDR's cross-examination of Deputy Ribble regarding the HGN evidence was beyond the scope of direct examination. KDR later indicated it intended to call Deputy Ribble to the stand to testify regarding the HGN evidence. The district court also refused to permit such testimony.

9

Although this issue is essentially moot because of our finding that no additional grounds were needed to justify the blood test request in this case, we will briefly address KDR's contentions about the HGN testing evidence in light of recent action by our Supreme Court.

In *City of Wichita v. Molitor*, 301 Kan. 251, Syl. ¶ 2, 264, 341 P.3d 1275 (2015), the Kansas Supreme Court held that because the HGN test is based on scientific principles, the State must establish the reliability of the test by scientific evidence before the results may be used by a Kansas court for *any purpose,* including proving reasonable suspicion.

Leverenz contends *Molitor* is controlling in this case and that Kansas law bars the use of HGN evidence without the State establishing the reliability of the HGN test. We agree.

Although the *Molitor* decision forbade the use of HGN evidence to prove reasonable suspicion for an officer to request a preliminary breath test, it would also logically bar an officer's testimony about HGN evidence to establish "reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both" under K.S.A. 2011 Supp. 8-1001(b).

We find the district court's decision to exclude the HGN testing in this case to be clearly correct in light of the Supreme Court's decision in *Molitor.*

*The constitutionality of K.S.A. 2011 Supp. 8-1001*

Finally, Leverenz contends the district court was correct in finding Deputy Ribble needed additional reasonable grounds to request the blood test because K.S.A. 2011

Supp. 8-1001, as interpreted by *Heitman*, is unconstitutionally overbroad. Leverenz raises this argument for the first time on appeal.

The Kansas Supreme Court has held in a motor vehicle license suspension case, if an issue is not first adequately raised at the administrative hearing, it may not be raised for the first time during the district court's de novo review. See *Kempke v. Kansas Dept. of Revenue*, 281 Kan. 770, 795, 133 P.3d 104 (2006). Constitutional issues, however, may be raised at the agency level, but they are decided by the courts. *Katz v. Kansas Dept. of Revenue*, 45 Kan. App. 2d 877, 895, 256 P.3d 876 (2011), *rev. denied* 297 Kan. 1246 (2013).

Issues not raised before the trial court cannot be raised on appeal. *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). The constitutionality of a statute, however, should be decided when it is necessary to determine the merits of the action or where the issues cannot be intelligently decided without doing so even if the parties failed to raise the constitutional question, failed to plead the question, or failed to present the question to the trial court. *U.S.D. No. 443 v. Kansas State Board of Education*, 266 Kan. 75, 91, 966 P.2d 68 (1998). Additionally, there are several exceptions to the general rule that a new legal theory may not be asserted for the first time on appeal, including: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case, (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights, and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), *cert. denied* 555 U.S. 1178 (2009).

Leverenz concedes she did not raise the issue below but does not argue what exception applies so that this court may hear the issue for the first time on appeal.

11

However, this court may review the constitutionality of the statute for the first time on appeal if it feels it is necessary to determine the merits of the case. The interpretation of K.S.A. 2011 Supp. 8-1001 is necessary to resolve this appeal, and, therefore, this court may review the interpretation of K.S.A. 2011 Supp. 8-1001.

Leverenz contends K.S.A. 2011 Supp. 8-1001, as interpreted by *Heitman*, is overbroad because "any law enforcement officer with reasonable grounds for a breath test could ask for additional testing of blood when there is no reasonable basis to believe that an individual has drugs in their system and could request an unlimited number of tests and continue testing over any duration of time." She points out that under the statute, if a driver refuses to take "a third or fourth blood test," her license would be suspended regardless of prior test results.

Our first response is to note that Leverenz' hypothetical does not fit the facts of this case. As noted above, we have found that Deputy Ribble did, in fact, have reasonable grounds to suspect both alcohol and drug use. Addressing the question as to whether officers in the future might abuse their discretion under the implied consent statute by requesting "an unlimited number of tests and continu[ing] testing over any duration of time" is well beyond our duty to resolve the issues presented in this case.

Whether a statute is constitutionally vague or overbroad is a question of law over which this court has unlimited review. This court must presume the constitutionality of a statute and resolve all doubts in favor of its validity. *State v. Whitesell*, 270 Kan. 259, 268, 13 P.3d 887 (2000).

An overbroad statute "'makes conduct punishable which under some circumstances is constitutionally protected.'" 270 Kan. at 270 (quoting *State ex rel. Murray v. Palmgren*, 231 Kan. 524, 533, 646 P.2d 1091 [1982]). An overbreadth challenge is successfully made when the protected activity is a significant part of the

12

law's target and the constitutional portion of the statute cannot be severed from the unconstitutional applications. *Whitesell*, 270 Kan. at 270.

Litigants may bring an overbreadth challenge that seeks to protect rights under the First Amendment to the United States Constitution of themselves and third parties because "'the mere existence of the statute could cause a person not before the Court to refrain from engaging in constitutionally protected speech or expression.'" *State v. Williams*, 299 Kan. 911, 919, 329 P.3d 400 (2014).

Leverenz' argument fails because she does not identify what constitutionally protected activity is made punishable under K.S.A. 2011 Supp. 8-1001. The right to drive a vehicle on public streets "is not a natural right but a privilege, subject to reasonable regulation in the public interest." *Standish v. Department of Revenue*, 235 Kan. 900, 904, 683 P.2d 1276 (1984). Kansas law provides that any driver is deemed to have given consent to submit to testing and every driver has the right to refuse to submit to testing; that refusal, however, results in a traffic infraction. See *State v. Edgar*, 296 Kan. 513, 527, 294 P.3d 251 (2013). K.S.A. 2011 Supp. 8-1001 is not overbroad because Kansas drivers do not have a constitutional right to drive and, therefore, the statute does not punish any constitutionally protected activity.

The district court's order setting aside the suspension of Leverenz' license is reversed, and the suspension of her license is ordered to be reinstated.